LORETTA B. WATSON *v.* DAVID P. WATSON
(7857)

BORDEN, DALY and NORCOTT, Js.

Argued November 8, 1989—decision released January 23, 1990

*Bruce Beck,* with whom, on the brief, were *Philip P. Apter* and *James M. Vaughan,* for the appellant (plaintiff).

*Linda Mariani,* with whom, on the brief, were *Ellen S. Giannini* and *Carolyn Brotherton,* for the appellee (defendant).

NORCOTT, J. The plaintiff wife appeals from the judgment of the state trial referee acting as the trial court in a contested dissolution action. On appeal, the plaintiff claims that the trial referee erred (1) in failing to award permanent periodic alimony, (2) in admitting certain nonexpert testimony as to land values, (3) in allowing the defendant to introduce previously undisclosed evidence, (4) in failing to assign to her the marital residence or any of the defendant's other interests in land or a monetary equivalent, and (5) in sustaining the defendant's objection to her motion to reargue. We find error in part.

At the time of the trial, the defendant husband was working at his father's farm, earning approximately $362 per week. He also received milk and meat free of charge from the farm. The plaintiff was a housewife, and was employed by several individuals to clean their houses, earning approximately $157 per week. The trial court dissolved the parties' seventeen year marriage, finding that it had broken down irretrievably. The plaintiff alleged physical abuse and a lack of communication. The defendant claimed that the plaintiff had become involved in another relationship, but the court found no probative evidence to support the third party relationship. The court awarded custody of the parties' minor daughters to the plaintiff and liberal visitation rights to the defendant. The court also ordered the defendant to pay $50 per week for each of two minor children, and $65 per week for the younger daughter when the older daughter reaches the age of eighteen. No award was ordered for a third child, who is handicapped, because the state of Connecticut provides for her care.

The court further ordered the defendant to pay periodic, nonmodifiable alimony in the amount of $35 per week, terminable at the end of three years. Finally, the court awarded the plaintiff exclusive use of the marital house until July 13, 1991, when the younger daughter reaches eighteen years of age. At that time, the defendant is to have possession and is to pay to the plaintiff a two stage lump sum property settlement of $80,000.[1] The court made no award to the plaintiff with respect to the defendant's other real property interests.

The plaintiff first claims that the trial court erred in awarding limited, nonmodifiable alimony. Our standard

---

[1] The property settlement required the defendant to pay the plaintiff $40,000 within three months of the date that she vacates the house and $40,000 within two years thereafter.

of review in domestic relations cases is clear. We will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did. *Timm* v. *Timm,* 195 Conn. 202, 210, 487 A.2d 191 (1985); *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 302, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). " 'A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. *Carpenter* v. *Carpenter,* 188 Conn. 736, 740–41, 453 A.2d 1151 (1982); *Carter* v. *Carter,* 8 Conn. App. 356, 358, 512 A.2d 979 (1986).' " *O'Neill* v. *O'Neill,* supra, 306, quoting *Debowsky* v. *Debowsky,* 12 Conn. App. 525, 526, 532 A.2d 591 (1987). No single criterion is preferred over others, and the trial court has broad discretion in varying the weight placed on each criterion under the circumstances of each case. *Carpenter* v. *Carpenter,* supra.

Notwithstanding the great latitude accorded to the trial court in awarding alimony and assigning property, the plaintiff argues that the trial court could not reasonably have concluded as it did with respect to the alimony award. After a careful review of the entire record before us, we agree with the plaintiff and find error.

In its memorandum of decision, the court found the following facts. The plaintiff had been employed as a teacher in Rhode Island prior to her marriage, ceased teaching when she became pregnant with her first child, seventeen years ago, and has not taught since that time. She is not licensed to teach in Connecticut and has been earning approximately $157 per week cleaning houses. The court further found that the plaintiff "has many physical problems with her knees, especially from arthritis," that she had undergone knee replace-

ment surgery on one knee in the past and that she would require replacement of the other "in the not too distant future."

The court rejected the plaintiff's claim for lump sum and periodic alimony and instead awarded her non-modifiable alimony of $35 per week for three years. After finding that the defendant is a fractional owner of four pieces of property, two comprising approximately one-half acre and two in which his fractional interest totals 208 acres and 123 acres, the court awarded no interest in those parcels to the plaintiff. The court also found that the defendant fraudulently conveyed the family residence to his children in order to remove the property from the marital assets, and yet it awarded the plaintiff exclusive use of that residence for a maximum term of three years during which time she is to be responsible for the payments of fuel and utilities, and with full rights to possession reverting to the defendant thereafter. The court further ordered that the plaintiff pay 20 percent of the children's private school tuition during the year of the order, and 50 percent thereafter.

In determining the alimony to be awarded, the trial court has broad discretion, but it must consider all of the statutory criteria enumerated in General Statutes § 46b-82, "including length of the marriage, the causes for the dissolution of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of the parties." *O'Neill* v. *O'Neill,* supra, 312–13; see *Carpenter* v. *Carpenter,* supra, 742. There must be some indication in the record as to the basis of the trial court's determination of the award. *Markarian* v. *Markarian,* 2 Conn. App. 14, 16, 475 A.2d 337 (1984). "At a minimum, the record should indicate that the trial court considered relevant statutory factors in making an alimony award containing an automatic termination date." Id.

Although the trial court stated in its memorandum of decision that it had "carefully considered the criteria of the alimony statute" and applied them to the case before it, we find that this award of alimony is logically inconsistent with the court's findings of fact. See *O'Neill* v. *O'Neill*, supra, 313. The court found that the plaintiff was earning $157 per week cleaning houses, and that she had many physical problems with her knees, including arthritis. It also acknowledged that she would most likely need to undergo a second knee replacement and, by these findings, implicitly found that she had a permanent disability. The court further found that although the plaintiff had been a teacher in Rhode Island, she has not taught in seventeen years and is not licensed to teach in Connecticut. We fail to see the logic behind the trial court's award of alimony in light of these findings regarding the length of the marriage, the plaintiff's physical disability and the facts relating to her employability. These findings do not support the court's award of time limited alimony.[2] *Roach* v. *Roach*, 20 Conn. App. 500, 507, 568 A.2d 1037 (1990); see *O'Neill* v. *O'Neill*, supra. Further, the trial court made no attempt to explain the basis of its decision in order to reconcile it with its findings of fact. See *O'Neill* v. *O'Neill*, supra; *Markarian* v. *Markarian*, supra.

The defendant suggests that this time limited award might have been meant to be rehabilitative alimony. He suggests that the court may have felt that while the plaintiff might no longer be able to clean houses, she might pursue her Connecticut teaching certifica-

---

[2] Following our reasoning in *Markarian* v. *Markarian*, 2 Conn. App. 14, 17 n.2, 475 A.2d 337 (1984), we again state that "[o]ur decision neither holds nor intimates that the trial court must make specific, detailed findings on each factor it considers pursuant to § 46b-82 or otherwise. We do, however, require that the record contain some indication as to the reasoning of the trial court in making an exercise of its discretionary powers in this type of proceeding."

tion or training for an office job. The specific issue of rehabilitative alimony, however, was never addressed by the court. "Underlying the concept of time limited alimony is the sound policy that such awards may provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency." *Markarian* v. *Markarian,* supra. The trial court here, however, expressed no belief that this rationale might be applicable. There is simply nothing in the record of this case to indicate that the trial court felt as the defendant suggests.

The rationale behind the trial court's award is not evident in the memorandum of decision, and the alimony award is logically inconsistent with the facts found by the trial court. We conclude, therefore, that there is error.

Having concluded that the trial court's award of nonmodifiable limited periodic alimony was logically inconsistent with the facts found by it, we must remand this case to the trial court. We cannot properly limit our remand to the issue of periodic alimony. "The issues involving financial orders are entirely interwoven. 'The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other.' *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 424, 479 A.2d 826 (1984)." *Sunbury* v. *Sunbury,* 210 Conn. 170, 175, 553 A.2d 612 (1989). " '[N]o single criterion is preferred over the others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case.' *Valante* v. *Valante,* 180 Conn. 528, 531, 429 A.2d 964 (1980)." *Sunbury* v. *Sunbury,* supra, 174. As in *Sunbury,* where the court addressed a similar dissolution situation, the trial court on remand in this case "could no more fashion just and equitable financial orders by reconsidering only the issue of periodic alimony, than it could

reassemble a broken vase with only one piece." Id., 173. Our remand to the trial court, therefore, is for a new hearing on all of the financial issues.

Because it is likely to recur at the new hearing, we now address the second part of the plaintiff's alimony claim, namely, that the trial court erred in allowing the defendant to offer his projected expenses as opposed to current expenses on his financial affidavit. The plaintiff argues that this admission into evidence of the defendant's projected expenses also constitutes error. We agree.

Practice Book § 463 requires that, at the time of the dissolution action, both parties file a sworn statement "of *current* income, expenses, assets and liabilities." (Emphasis added.) The defendant, however, apparently having few current expenses, listed projected expenses on his financial affidavit. These expenses were speculative and should not have been considered by the court.

By the defendant's own admission, the expenses that he listed on his sworn financial affidavit were projected. He had moved in with his parents and was not currently paying mortgage, taxes or insurance. Yet, the defendant estimated the expenses that he might pay should he move out on his own.

Consideration of projected expenses is analogous to consideration of projected assets, an issue that has been addressed by this court. See *Manaker* v. *Manaker,* 11 Conn. App. 653, 528 A.2d 1170 (1987). In *Manaker,* this court dealt with a dissolution in which the defendant husband had moved out of the marital residence and was living with another woman. In that case, we held that "[c]learly, any future benefit the defendant may receive from the possibility of the housemate transferring assets to him is, at best, speculative and should not have been received into evidence for the purpose of assessing the defendant's future economic

prospects." Id., 655. We held that the trial court could properly consider the housemate's financial resources as relevant in determining the defendant's living expenses because any contributions made by the housemate would be relevant to the defendant's *current* expenses. Id.; see also *Rubin* v. *Rubin,* 204 Conn. 224, 527 A.2d 1184 (1987) (consideration of a "potential inheritance" disallowed because it was speculative and not current).[3]

Nor can expenses be projected on the basis of speculation. What is relevant in determining the alimony and property division are the defendant's *current* expenses, or, in some instances, the defendant's future but definitive expenses. See *Rubin* v. *Rubin,* supra, 230–31. In determining property division, the trial court may usually consider only the *current* assets and liabilities of the parties. See id., 231. If a court could consider such projected expenses, a party would be able to insulate portions of his income from distribution by masking them as necessary to pay nonexistent expenses.

We also consider, because it is likely to recur at the new financial hearing, the plaintiff's claim that the trial court erred in admitting the testimony of the defendant's father regarding the value of land belonging to him and his neighbors. She claims error because the witness testified to the development rights and not to the value of the land itself.

The witness testified that he owned two parcels of land in Preston and that his son had a fractional interest in each. He then testified to their value. During his direct examination, he provided the sale prices of sev-

---

[3] In *Rubin* v. *Rubin,* 204 Conn. 224, 229–30, 527 A.2d 1184 (1987), our Supreme Court held that expectancy of inheritance " ' "has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist." . . .' *Krause* v. *Krause,* [174 Conn. 361, 365, 387 A.2d 548 (1978)]." (Citation omitted.)

eral of his neighbors' properties and, on cross-examination, he stated that these sale prices were for the development rights of those properties.

"It is well settled that an owner of property is competent to testify as to its market value. *Misisco* v. *La Maita,* 150 Conn. 680, 684, 192 A.2d 891 (1963)." *Ratner* v. *Willametz,* 9 Conn. App. 565, 582, 520 A.2d 621 (1987). An owner can base his opinion on his familiarity with the value of similar properties in the same general area as his own. See *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 544 n.7, 429 A.2d 801 (1980). The fact that the witness testified to the value of the development rights, which is lower than the value of the land itself, does not render the admission of that testimony erroneous. The witness, as the owner of the property, was qualified to render his opinion on the value of his land, including diminished value. *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 41, 440 A.2d 801 (1981). The weight to be accorded that testimony rests with the trier of fact. *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 422, 446 A.2d 799 (1982); *Ridgeway* v. *Ridgeway,* supra. Accordingly, we find no error.

We need not consider the plaintiff's other claims because they are not likely to recur or are already subsumed under our remand for a new hearing on the financial issues.

There is error in part, the judgment as to the financial issues is set aside and the case is remanded for a full hearing on the financial issues.

In this opinion the other judges concurred.