[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Aita H. Hunt and Defendant Hugh I. Hunt were married on November 25, 1971 at Glen Williams, Ontario, Canada. They have resided in this State continuously since 1977. The Plaintiff was born on April 23, 1948, and the Defendant on December 15, 1923. Plaintiff was age 23 at the time of the marriage, and is now age 46. Defendant was age 48 at the time of the marriage, and will attain age 71 in December of this year.
There are four children of the marriage: Alexandra, age 22, born August 6, 1972; Samantha, age 19, born October 9, 1975; Christina, age 17, born April 20, 1977; and Katherine, age 15, born November 14, 1979. Alexandra is in her final year at Tufts, and Samantha is a sophomore at Lehigh. The two minor children reside in the marital residence in Goshen.
This was the first marriage for the Plaintiff and the second for the Defendant. His first marriage ended in a divorce in 1970. He has three children of that marriage, a son age 47, and two daughters respectively age 44 and 37. The son moved to Connecticut in 1993 and apparently is employed in the Defendant's business. CT Page 10848
The Plaintiff, who remains a Canadian citizen, has had formal education through grade 10. The Defendant, who is a World War II United States Army combat veteran, has had college equivalency courses.
The marriage has irretrievably broken down. Each blames the other. She asserts that he is aloof, domineering and abusive. He asserts that she is a religious fanatic and is overly critical and suspicious. The Court will not assess blame to either party.
The marital relationship has been in turmoil for many years. Plaintiff commenced divorce proceedings in 1985 but withdrew them in 1986 when the parties briefly reconciled. It would appear, at least in recent years, that the parties have been living separate and apart from each other, although in the same household. Plaintiff has no involvement in and virtually no knowledge of Defendant's business and financial matters. In 1990, unknown to her, Defendant revised his estate plan leaving to Plaintiff only, as he described it, "what was required under law." He testified that he did this to protect their daughters, respecting whom he has been quite generous and solicitous, so that "the funds would not go to one of her religious organizations." He signs her name to their joint personal tax returns.
Plaintiff appears to be in good health. She did experience a period of despondency after their move to Goshen in 1978 which escalated to the point where she nearly committed suicide with an overdose of valium and bourbon. This has long since passed, and she now appears psychologically well adjusted.
Plaintiff has been employed from time to time, initially particularly when the family had financial needs. In fact, during the 1985-1986 divorce action, she was ordered by the court to pay $90.00 per week for household expenses. Since then, due to the success of his business, Defendant is more than amply able to provide for his family's needs. Whatever spotty employment plaintiff has had in recent years, has been to provide income for her personal purposes. She appears to have no special employable skills. Currently, Defendant has been giving her $200.00 per week for her personal uses.
Defendant has had an angioplasty to the same artery twice during the past three years, the first in 1991 and the second in the summer of 1993. As evidence of the parties' estrangement, CT Page 10849 Plaintiff was not aware on either occasion that he was undergoing these procedures, each requiring several days hospital stay, until some time afterwards. He presently takes medication for high blood pressure.
In the early years of the marriage, Defendant's business endeavors had their ups and downs. Just prior to their moving to Connecticut, his then business was the subject of bankruptcy proceedings. All this has changed for the better. He is the sole stockholder of a corporation known as Ground Support Products Corporation ("Defendant's corporation"). The corporation maintains its office at the marital residence and uses a barn on the premises for storage and other purposes.
The business of the corporation is the sale of industrial tires and accessories, primarily for airline industry ground equipment. Its business is apparently worldwide. Defendant testified that its annual gross sales have reached $1,500,000. The corporation's fiscal year ending is September 30. Tax returns for the period ending September 30, 1994 have not as yet been prepared.
No corporate tax returns or financial statements were placed in evidence. Returns for fiscal years prior to that just ended apparently are available as Plaintiff's counsel questioned the Defendant about $109,000 of travel expenses purportedly shown on the 1989 return. It is also reasonable to assume that corporate financial statements exist, as the corporation had a significant credit relationship with Shawmut Bank at least into 1993. The only evidence of the value of Plaintiff's 100% stockholder interest in the corporation is that listed on Defendant's trial financial statement, to wit: "Estimate of net book value — $125,000.00". No corporate documentation was presented.
In 1993 Defendant established a Cayman Islands corporation known as GSP, Ltd. (the "Cayman corporation"), of which he is the sole stockholder. The Cayman corporation acts as an offshore vehicle for requisite letters of credit in connection with purchases of materials from foreign sources by Defendant's corporation. The issuing bank is a Cayman Islands branch of a Canadian bank known as CIBC.
The credit arrangement requires that funds be placed on deposit in interest bearing accounts in CIBC sufficient to cover the full amount of issued letters of credit plus bank charges. CT Page 10850 The statement of CIBC in evidence (Dft. Ex. E) indicates that as of September 14, 1994 sums totalling $449,097.94 were on deposit, of which $395,000 was hypothecated, leaving $55,000 free of encumbrance. A further letter of credit application in the amount of $28,828 (Dft. Ex. E) reduces the freed up amount to $26,172. Defendant testified that the funds on deposit represent loans from his corporation to the Cayman corporation.
Purchases represented by these letters of credit apparently are not made merely to replenish the Defendant's corporation's inventory, but rather to fill specific orders from its underlying customers. Accordingly, it does not appear that the amount on deposit at CIBC is necessarily diminished when a particular letter of credit falls due. Most likely, payment in excess of that amount will already have been received from that customer.
Other than the foregoing CIBC statement, no other financial evidence or corporate documentation relating to the Cayman corporation was presented. There is no reference to it either in Defendant's trial financial statement or in his 1993 personal tax return (Dft. Ex. D). Defendant testified that he considers the Cayman corporation as a "wash transaction." His accountant testified that he is inclined to treat the Cayman corporation as a subsidiary of Defendant's corporation, which means that the considerable interest earned on the CIBC deposits will be declared on the pending tax return of Defendant's corporation. However, interest so earned in the prior fiscal year has not been so declared.
Other than her interest in the marital residence and a pending distribution from her mother's estate, Plaintiff's trial financial statement shows no significant income or assets. Within the next six months she anticipates receiving from her mother's estate a final distribution of $94,825.79 Canadian. Under present exchange rates, this approximates to $67,804.79 U.S. She uses a 1988 Lincoln Town Car which is registered to Defendant's corporation.
The principal assets shown on Defendant's trial financial statement are his interests in the marital residence and in his corporation. His weekly net income is shown as $1,915.46, of which $1,437 is derived from his corporation. It is apparent that various of his expenses are paid by the corporation.
The marital residence located in Goshen and more particularly CT Page 10851 described in the various deed exhibits (Dft. Exs. M, O, P) was acquired in joint names in 1978 for $53,000. It consists of a house built in 1803 and outbuildings on 2 1/2 acres. Extensive renovation was required. Shortly after acquisition, Defendant transferred his interest to Plaintiff because of pending litigation. As part of the 1986 reconciliation, title was again placed in both names as joint tenants. In 1990, using his daughter Alexandra as the straw, Defendant without Plaintiff's knowledge severed the joint tenancy. Each now holds a 1/2 interest as tenants in common.
Both parties value the marital residence at $350,000. The Court will accept this value. Watson v. Watson, 20 Conn. App. 551,560 (1990). The premises are subject to a first mortgage dated April 29, 1992 in the original principal amount of $90,345, providing for monthly amortized payments of $877.00 over a 15 year period commencing June 1, 1992. The present unpaid principal balance is approximately $81,823. The equity, rounded off, is $270,000.
The parties are in agreement that they shall have joint custody of the minor children, with Defendant to have physical custody. Defendant will remain in the marital residence, Plaintiff to remove herself therefrom. Accordingly, no support order is necessary. Based on his trial financial affidavit, his support obligation under the guidelines would otherwise amount to $373.00 per week. Defendant has acknowledged that he will pay for the children's college education. He is presently doing so for the two older children, and states that he has established trust funds for that purpose for the two minors.
The principal financial issues to be decided by the Court concern a division of the marital estate and alimony. Plaintiff has no interest in Defendant's business assets or in the corporations through which he conducts his business. The parties agree that they will amicably divide their joint personal property at the marital residence. With respect to the marital residence, the Court is cognizant that the parties presently own equal interests as tenants in common, and that the Defendant has been primarily responsible for the expenses of financing, taxes and maintenance. Plaintiff will now have to obtain a new residence at her own expense.
In making the following findings and orders, the Court has carefully considered the pertinent statutory criteria and CT Page 10852 requirements, including those within the purview of General Statutes §§ 46b-81 and 46b-82. The Court has carefully reviewed the evidence in conjunction with the same, and has evaluated the credibility of the parties.
The Court makes the following findings and orders:
1. The court has jurisdiction.
2. The marriage has broken down irretrievably.
3. The marriage is dissolved.
4. With respect to the real property comprising the marital residence:
 a. Plaintiff shall convey her interest therein to the Defendant, and shall forthwith execute the appropriate deed of conveyance. The deed shall be delivered to and held in escrow by her counsel of record in this action, subject to the provisions of this Paragraph 4.
 b. Defendant shall pay Plaintiff therefor the sum of $135,000, representing the value of her 1/2 interest.
 c. The closing hereunder, involving said payment and deed delivery shall occur on or before 60 days next after the date of this order.
 d. Defendant shall be responsible and shall pay when due all expenses for mortgages, taxes, insurance, upkeep and maintenance, and shall indemnify, defend and hold harmless the Plaintiff from any claim, cost, expense or liability respecting the same.
 e. Costs of recording the deed and conveyance taxes shall be paid by Defendant.
5. Plaintiff is awarded lump sum alimony in the amount of $30,000, due and payable in three consecutive annual installments of $10,000 each on the first day of November commencing November CT Page 10853 1, 1995. This award shall not be modifiable for any reason.
6. Plaintiff is awarded periodic alimony in the amount of $400.00 per week for a period of eight years. This award shall terminate upon Defendant's death or incapacity, or upon Plaintiff's death, remarriage or cohabitation with any person.
7. Medical insurance equivalent to that now in effect shall be maintained for Plaintiff at Defendant's expense for the period of 18 months or such later period as may be required by COBRA and shall terminate when and if the equivalent is provided by Plaintiff's employment. Plaintiff shall be solely responsible for unreimbursed medical expenses. Except as may otherwise be required by COBRA, Defendant's obligation hereunder shall cease upon the happening of any event which is the basis for termination of the periodic alimony award.
8. The parties shall divide their joint personal property at the marital residence as they may agree.
9. The 1988 Lincoln Town car now used by Plaintiff shall forthwith be transferred to her free and clear of any lien or charge.
10. Except as otherwise provided herein, each party shall hold and retain all assets shown on such party's trial financial statement, including IRA accounts and any interest in pension or profit sharing plans, free and clear of any and all claim of the other, and shall be solely responsible for such party's debts shown thereon.
11. The parties shall have joint custody of the minor children. Defendant shall have physical custody of the minor children, and they shall reside with him at the marital residence. Unless the Defendant shall have died or becomes incapacitated, Plaintiff shall have no obligation for support and maintenance of the minor children. Plaintiff shall have reasonable visitation. In the event of any dispute regarding visitation, the wishes of the children shall be given prime consideration.
12. Defendant shall indemnify, defend and hold harmless the Plaintiff from any and all claim, cost, expense or liability respecting any joint federal or state income tax returns of the parties. Any refunds shall be the property of Defendant. CT Page 10854 Defendant shall be entitled to all available exemptions pertaining to the children.
13. Within 30 days from the date of this order, Defendant shall pay the attorney's fees of Plaintiff's counsel of record in the amount of $10,000.
DAVID L. FINEBERG, J.