CAROL FISCHER *v.* LEROY FISCHER

Superior Court      Judicial District of      File No. FA930129977S
Stamford-Norwalk at Stamford

Memorandum filed March 21, 1995

*Holland, Kaufmann & Bartels,* for the plaintiff.

*Leroy Fischer,* pro se, and *Sheryl Shaughnessey,* for the defendant.

HARRIGAN, J. The plaintiff, Carol Fischer, and the defendant, Leroy Fischer, both fifty-six years of age, were married on December 23, 1961, in St. Louis, Missouri. The defendant has lived in Connecticut continuously for over one year prior to the commencement of the plaintiff's action for dissolution, thus furnishing the court with jurisdiction over this matter. The parties have two adult children.

On June 18, 1982, the parties entered into a separation agreement dividing their personal property, providing for the disposition of their real estate and, in article IV of the agreement, providing for separate maintenance to be paid to the plaintiff by the defendant. This maintenance was for the benefit of the plaintiff, who agreed

to provide the children with "support and sustenance" from those payments until the children became emancipated as defined in article VII of the separation agreement.

Pursuant to New York law, the parties agreed that the separation agreement would be filed in the Wayne county clerk's office, thereby affording either party grounds for an action for divorce after one year's compliance with its terms subsequent to the execution. Neither party ever initiated an action for divorce in the New York courts.

The plaintiff now seeks to have the separation agreement incorporated into the judgment being sought in the present action. A finding was made by this court that, at the time the parties entered into the separation agreement, it was fair, equitable and enforceable.

The parties complied with the separation agreement's terms in disposing of the real estate known as 3966 West Main Street, Williamson, New York. The parties agreed to hold a $39,000 purchase money mortgage due in ten years. To simplify the collection of the interest payments, the parties agreed that the plaintiff would collect them and remit the defendant's share to him. The defendant was paid his share of the proceeds of the sale by the plaintiff.

Pursuant to their separation agreement, the parties divided their personal property and agreed upon the disposition of the proceeds following the sale of their marital home in Williamson, New York. The property division was completed. With her proceeds, the plaintiff purchased her present home. In order to help her pay off her mortgage, the defendant lent the plaintiff $9000. An unpaid balance of $6500 remains on this loan.

The defendant paid the maintenance or alimony through 1991. In a letter dated March 29, 1989, the

defendant proposed a modification of the separation agreement. There was no further negotiation.

The defendant was employed by Pet Incorporated (Pet) in St. Louis for five years before being hired by Xerox Corporation (Xerox) in New York state, which brought about the family's move from Missouri. The plaintiff was a computer consultant at Pet and a project leader at Xerox. He left the latter in 1982 to join Howard Systems as a vice president, where he remained until 1990. The defendant relocated to Stamford, Connecticut, in April, 1983. The plaintiff and the younger son, Todd, then twelve years of age, moved back to Missouri in June, 1983.

The breakdown of the marriage began in 1981 when the defendant began seeing another woman. This relationship ripened into a long-term liaison that continued until the trial of the present case. For her part, the plaintiff admitted committing adultery with a house guest who stayed at the family home between August and November of 1982. Since the breakdown of the marriage was complete by the time the separation agreement was executed, the plaintiff's behavior after June, 1982, did not contribute to the breakdown. *Venuti* v. *Venuti*, 185 Conn. 156, 158–59, 440 A.2d 878 (1981). The defendant's behavior is found to be the prime cause for the breakdown.

The plaintiff claims to have multiple sclerosis but no medical evidence was produced to substantiate her claim. The plaintiff was able to obtain her own Blue Cross and Blue Shield policy after a doctor's examination in 1988, which then remained in effect for two years without any claim being made, as the plaintiff advised the defendant in a letter dated January 8, 1990. The defendant responded by urging the plaintiff to be included on the family coverage available through his then current employer. Shortly thereafter, however, the

defendant left Howard Systems, and, after another five months as a salesman, he became unemployed. The Blue Cross and Blue Shield of Missouri confirmed coverage in June, 1994.

The defendant observed the terms of the separation agreement, with the possible exception of the escalator clause in the alimony, through 1990. In 1991, the defendant reduced his payments to $1000 monthly from $1400 monthly.

During this time, the plaintiff had a boarder, Karen Adams, who moved in during 1985, and moved out during 1989. The plaintiff estimated that she received $6000 from Adams, who also did yard work.

In the course of thirteen years, the plaintiff has done little to develop her earning capacity or to hone her employment skills. Instead, the plaintiff seeks to enforce the 1982 separation agreement by having this court adopt it for the judgment and then to apply it retroactively.

Since 1991, the defendant has been the owner and operator of a corporation, CIII Incorporated, doing business as Manhattan Bagel, a franchised retail bagel and food store. The corporation elected S corporation status for income tax purposes. The corporation's 1993 form 1120S federal income tax return lists assets of $118,439, gross profit of $224,547, officers' salaries of $30,443, and net profit of $6030. The return also lists loans from shareholders of $119,378, with $1000 of capital stock. In addition, the defendant paid a franchise fee of $30,000. The defendant has clearly made a substantial investment in Manhattan Bagel.

The defendant has maintained a brokerage account with his girlfriend for several years. The account "Roy C. Fischer & Benneda A. Lynn" often contained about $26,500 in securities in 1991. By the end of 1992, this

account had grown to $80,670. Since then, this account had shrunk to $9793 as of the end of October, 1994. The defendant attempted to explain the sources and the disposition of the cash in a fashion that the court found unintelligible and incredible. The court wonders if the catalyst was not the plaintiff's dissolution suit which threatened the defendant's assets. The broker's year-end tax information statement listed total dividends of $3069.50 and security sales proceeds totaling $37,521.55.

The defendant testified that, at one time, he maintained thirty-two different bank accounts. The defendant received $23,535 from his sister as his share of his parents' estates in 1992.

The defendant owns three parcels of real estate jointly with his girlfriend, all acquired after the defendant moved to Connecticut. They live in half of a two-family house located at 85 Palmer Avenue, Stamford, and collect $700 monthly rent for the other apartment. They rent a two-family house located at 16 Culloden Street, Stamford, from which they collect $1034 monthly. The third parcel, located at 21 Cold Spring Road, Stamford, produces $1750 in monthly income from two apartments. The defendant's financial affidavit dated November 9, 1994, values the Palmer Street property at $192,000, the Cold Spring Road property at $200,000, and the Culloden Street property at $201,000. The properties are mortgaged for $204,000, $158,000, and $123,200, respectively.

The defendant has listed individual retirement accounts (IRAs) valued at $85,446. The defendant holds a $26,000 purchase money mortgage dated July 1, 1987, at 10 percent interest with monthly payments of $343.60; the final payment is due on July 1, 1997, and the mortgage is secured by a lake cottage in Missouri owned by his sister. The defendant also receives income from his

corporation for interest on his loans to the corporation, given as $791. He is also a licensed gun dealer and derives some income from this activity as well.

The court questions the credibility of the defendant's testimony. The explanation given of his financial dealings is found to be intentionally vague and confusing. The shrinkage of the brokerage account is found to be an effort to protect his assets from the plaintiff and the court. The court finds that the defendant has the earning capacity to pay $225 in weekly alimony.

The plaintiff owns her home in Fredericktown, Missouri, free of mortgage, which she values at $65,900. She owns her 1988 Honda Accord LX1 automobile which she values at $6000. The plaintiff has an IRA valued by her at $14,000.

It appears to the court that much of the defendant's accumulation of assets took place after the parties' separation. Ergo, the accumulation occurred during the years that the defendant paid the separate maintenance, the plaintiff's taxes thereon, and the medicals. The court finds no reason to divide the parties' assets again as part of this judgment.

The defendant's high earnings years came to an end when he became unemployed. He became eligible for and did collect unemployment compensation, clearly remaining ready, willing and able to work.

The defendant's new business venture does not bring the present case within the purview of *Miller* v. *Miller*, 181 Conn. 610, 611–12, 436 A.2d 279 (1980), which allows the court to apply the "earning capacity" principle.

Both parties' listing of weekly expenses cannot be justified as actual cash costs if their respective incomes are accurate. *Watson* v. *Watson*, 20 Conn. App. 551,

558–59, 568 A.2d 1044 (1990), rev'd in part, 221 Conn. 698, 607 A.2d 383 (1992).

The court concludes that it is not equitable to incorporate the parties' separation agreement into the judgment of dissolution. Such action would convert this dissolution action into a breach of contract or specific performance action, lending the plaintiff the additional tool of contempt to her collection of the unpaid portions of the separation agreement she claims now to be due to her. Ordinarily, the separation agreement presented to the court is prospective in nature, executory, and, after being incorporated into the judgment, remains subject to modification, such as to periodic alimony, for example. In the present case, the original amount of separate maintenance included an unspecified amount of child support. The defendant continued to pay the maintenance after the child attained majority. Both parties must bear the burden for not completing their divorce or dissolution over a decade ago. This court will not turn back the hands of time.

Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment: (1) a decree is entered on the complaint dissolving the parties' marriage on the ground of irretrievable breakdown; (2) the defendant shall pay to the plaintiff the sum of $225 in periodic alimony weekly until the plaintiff's remarriage or until the death of either party;[1] (3) each party shall continue to own and to possess the assets each now owns or possesses; (4) the plaintiff's note balance of $6500 is cancelled and the note is to be returned to the plaintiff; (5) the plaintiff is awarded $10,000 as an allowance to prosecute, payable in five installments, on the first day of June and on the first day

---

[1] General Statutes § 46b-86 (b) is included in every judgment and is not mentioned above.

of each third month thereafter; and (6) the defendant's cross complaint is dismissed as moot.

Counsel for the plaintiff shall draft the judgment file.