[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff (hereinafter the wife) and the defendant (hereinafter the husband) were married on September 1, 1962. Their two children have reached their majority; therefore, neither party has a legal obligation to support them. Their son, who is now 27 years old, will graduate from medical school this year and begin his residency in the fall, and their daughter, age 22, graduated from college and temporarily is living with the wife in Aspen, Colorado. To their mutual credit, they both contributed towards the children's tuitions and other college expenses and are currently helping them get started. Both parties resided in the state of Connecticut for more than one year prior to filing the complaint; therefore, the court has jurisdiction.
Both parties were represented by counsel in this limited contested dissolution proceeding, and both testified at length on the cause of the marital breakdown. The wife claimed the husband was an alcoholic and his excessive drinking caused him to become isolated from the family. He felt they were unable to communicate their emotional feelings to each other, the same problems their respective parents had experienced in their marriages. While he did admit having gone to AA meetings, he never missed a day at IBM, where he was employed for over thirty-four years in a responsible executive position. The parties' relationship deteriorated during this 32 year marriage and each developed different needs and values. The wife admitted she had had no sexual relations with the husband since 1980.
After hearing all their testimony and reviewing the evidence, the court finds neither party at fault and enters a decree of dissolution on the ground of irretrievable breakdown. Section 46b-40(c)(1) of the General Statutes. CT Page 3387
To understand the financial orders that follow and the financial problems that have developed throughout this thirty-two year marriage, it may be helpful to recite some of the background facts. The husband graduated from Iowa State University earning a degree in electrical engineering. He later obtained his M.B.A. with honors from the University of Connecticut. His lifelong career was with IBM, where he worked in responsible executive positions for over thirty-four years with annual earnings exceeding $90,000. His employment required him and the family to move over fifteen times, finally settling in Westport for the past fifteen years. He retired from IBM two years ago at age 62 and now resides in Phoenix, Arizona. During the time they lived in Westport, he served as an officer of the Little League in which his son participated, served as head of deacons and as a trustee of the Saugatuck Congregational Church and in many other community functions. He is currently 64 years of age and is in good health.
The wife graduated Phi Beta Kappa from Grinnell University. During the early years of the marriage, she worked equally as hard as the husband as homemaker and mother. After raising their two children, the wife became a realtor and sold real estate in the Westport area for the past fifteen years. She also found and purchased property to rehabilitate and sell and her investments earned them additional income. She was a successful realtor and developer, with average earnings of $75,000. She earned a realtor of the year award in Westport. The parties lived a handsome lifestyle, belonging to the Patterson Country Club, taking annual family ski vacations during the Christmas holidays in Aspen, Colorado over a ten year period, as well as two vacations in Paris. The wife relocated to Aspen about a year ago and presently is in good health.
In 1988, they purchased a 5,500 square foot residential dwelling that needed rehabilitation and known as No. 2 Snowflake Lake in Westport, Connecticut. The wife believed they could turn it into a one million dollar profit. During the next five years real estate dropped considerably and it became a financial disaster, a "Mr. Blandy Builds a Dream House" story. The wife invested her $250,000 IRA pension while the husband took his assets of about $550,000, which included selling all of his IBM stock ($276,000), his 401K pension plan ($150,000) and his early retirement severance package ($130,000) to put into this property. The property was finally sold in June, 1993. Instead of realizing the net profit of one million dollars they expected, after payment of all debts and expenses, they realized a gross profit of about $345,000 from the sale. (See exhibit J.) The recession and the declining values of Westport real estate had caused their shortfall and CT Page 3388 neither one was at fault. After paying $90,000 to the IRS for taxes and about $80,000 in household debts, the wife divided the balance of $165,000 by placing about $100,000 in her account and $65,000 in the husband's account.
In September, 1993, without any notice to the husband, the wife moved to an apartment in Fairfield and took most of the personal property with her. The husband had gone to his brother's funeral in Texas and came home to find both his wife and most of their personal property gone. About a year ago, the wife, now 58 years old, relocated to Aspen, Colorado and is currently looking for employment. During the past eighteen months, she has spent the $100,000 she realized from the sale of the Snowflake property, and the husband has used his $65,000 together with his IBM pension for his living expenses. Additionally, the wife has spent $7,500 from the sale of her Jaguar, $10,000 she transferred from a joint account to her own, and has accumulated debts of approximately $47,000. Her cash assets are listed as $1,245 on her current financial affidavit.
The wife's financial affidavit also lists a four unit apartment house at 26 Franklin Street in Westport valued at $200,000 with a $200,000 mortgage due the New Haven Savings Bank. She shows current monthly income as $1,977 with expenses of $3,206, which includes mortgage, taxes and insurance expenses of over $2,500, which sums have not been paid for the past eighteen months. She has owned this investment property in her own name for over sixteen years. Even during these past eighteen months, the property has had a positive cash flow of about $1,200, which she has retained. In her claims for relief, she urges the court to have the husband pay one-half of the $3,206 in monthly expenses while she would retain the rental income. They would also split 50%-50% any shortfall or profit from a sale and be equally liable for any deficiency judgment on the mortgage.
The court has considered but rejects the wife's argument. She was an authority on Westport real estate and decided to purchase this property in her own name. While they paid the expenses from marital funds, she never transferred or quit claimed a one-half interest to her husband. Throughout this marriage, the wife handled the finances and all of their earnings went into a joint account which she controlled. The court shall not require the husband to now take his IBM pension in order to assume the liabilities on this real estate. The division of property is to give to each party what is fair and equitable. Rubin v.Rubin, 204 Conn. 224, 288 (1987). The court will allow title to this real estate to remain with the plaintiff as well as the liabilities. (Sec. 46b-81 of the General Statutes.) CT Page 3389
The husband retired to a small apartment in Phoenix, Arizona and is living on his IBM pension and Social Security which total $1,045.58 gross. He shows $2800 in bank accounts and placed a value of $6,000 on an automobile for total assets of $8,800. He testified he has tried unsuccessfully to earn income as a consulting engineer since his retirement.
The court must base its financial orders on the current financial affidavits of the parties. Watson v. Watson, 20 Conn. App. 551. The husband shows present weekly income of $837.67 from his IBM pension and $207.91 from Social Security for total income of $1,045.88 with a net weekly income after estimated taxes of $783.53. His estimated expenses are $1,033. He has $2,800 in two bank accounts and his automobile is valued at $6,000 for total assets of $6,800 with liabilities of $15,800.
The wife has no present income from employment since she relocated to Aspen, Colorado although she is hopeful of finding work within the next three or four months. She does not plan to sell real estate because she does not know the market and feels that at her age, selling real estate in a new market would be difficult. She lists monthly expenses at $3,925 of which about $3,200 are expenses from her 26 Franklin Street property. She lists cash assets of $1,245 in a bank account with total assets of $13,245. Her debts total $47,495 of which about $8,500 is in credit cards, $14,524 in mortgage payment arrears to the New Haven Savings on the 26 Franklin Street property and some balances due for elective plastic surgery she had done after the parties separated. The marital credit card debts had been paid in June, 1993 from the proceeds of the sale of the 2 Snowflake Lane property. The court has considered all these facts in deciding the liabilities of the parties as to their debts.
The primary dispute for the court to decide is how much of the husband's net retirement income is the wife entitled to receive after a 32 year marriage. In the wife's claims for relief, she urges the court to divide the pension equally through a Qualified Domestic Relations Order (QDRO) pursuant to § 46b-81 of the General Statutes, which is nonmodifiable. The husband, on the other hand, urges the court to grant her a lifetime periodic alimony award of $150 a week pursuant to § 46b-82
of the General Statutes. Both these statutes set forth similar criteria that the court must consider in making its orders but primarily involve the financial needs of both parties, their employability, and the amount and sources of their income. The relevant considerations vary from case to case and depend usually on the present circumstances of the parties.Chamblis v. Chamblis, 171 Conn. 278, 279 (1976). CT Page 3390
Unfortunately, as in most cases, there are not enough assets left to satisfy the parties' needs, and they must adjust their lifestyles drastically with the income available. Both parties have worked hard during this 32 year marriage, but the financial drain in developing the Snowflake Lane property depleted their assets. The parties worked hard to support their families and both made significant contributions towards the educational expenses of their two children, of whom they can be justly proud. In the early years, the wife's efforts enabled the husband to devote full time to working for IBM and to developing his career. The wife now finds herself without any pension or assets. The court has considered her efforts as a mother, homemaker and her career in real estate, O'Neill v. O'Neill, 13 Conn. App. 300 (1988), in reaching its decision.
A pension may be considered either as an asset subject to division under § 46b-81 or a source of income from which present or future alimony may be ordered pursuant to § 46b-82. The approach which best suits a particular case will depend upon the individual circumstances. Askinaziv. Askinazi, 34 Conn. App. at 339 (1994). The court finds that it is more equitable to consider the husband's IBM pension as a source of income rather than as property division because the alimony order is subject to modification by either party upon proof of a substantial change in circumstance. Sec. 46b-86(a).
The court does not find this to be an earning capacity case as to either party. The wife is now 58, and her chances for finding employment are limited. It is unlikely she would earn what she had as a realtor in Westport. The husband has not been able to find work as a consultant since, according to his testimony, there are many retirees with similar backgrounds in the Phoenix area.
The court has considered all the evidence, the current financial affidavits of the parties as well as all the criteria in §§ 46b-8146b-82 and 46b-62 of the General Statutes and the relevant case law and the claims for relief filed by the parties and enters the following orders.
1. ALIMONY
 The husband shall pay the wife periodic alimony of $1,600 a month until the death of either part, the wife's remarriage or her statutory cohabitation pursuant to § 46b-86(b) of the Connecticut General Statutes. This award is about one-half of the husband's net annual retirement income of $40,716. When the wife is eligible CT Page 3391 to receive her own Social Security benefits at age 62, the alimony shall be reduced to $1,200 a month.
 Either party may earn a net income of $10,000 per year prior to any motion to modify alimony being filed pursuant to § 46b-86(a). The parties shall exchange copies of their federal income tax returns by May 1st of each year hereafter.
2. REAL ESTATE — 26 FRANKLIN AVENUE, WESTPORT, CONNECTICUT
 The wife shall retain sole title to this real estate, (which she has owned in her individual name for over sixteen years) and shall continue to receive the income therefrom and be liable for all mortgage, taxes and expenses and hold the husband harmless from any claims therefrom.
3. INSURANCE
 (a) The husband shall maintain life insurance of $100,000 naming his wife as irrevocable beneficiary until his obligation to pay her alimony terminates. Proof of insurance shall be given to the wife upon her request.
 (b) If available through IBM, the wife shall be entitled to COBRA benefits for health insurance at her own cost. The wife may also assume payment of the weekly premium of $21.67 for long term health care now being paid by the husband.
4. AUTOMOBILES:
 The husband shall continue to own the 1991 Audi automobile listed on his financial affidavit.
5. ATTORNEY'S FEES:
Each party shall be responsible for his or her own attorney's fee.
6. INCOME TAXES
 Each party shall continue to be responsible for payments of federal income taxes for 1991 and 1992 in accordance with their agreements with the IRS.
7. DEBTS CT Page 3392
 Each party shall be responsible for his or her own respective debts as listed on the respective financial affidavits. The court has considered and rejected the wife's claim that the husband should be liable for one-half of her debts listed at $47,495 as well as 50 percent of any deficiency of judgment which the New Haven Savings Bank may obtain against her.
 The court has considered that the wife received $35,000 more than the husband when 2 Snowflake Lane was sold on June 22, 1993, that she transferred $10,000 from the parties' joint account to her own checking account and also kept the $7,500 from the sale of her Jaguar automobile. Furthermore, the past credit card debts had been paid after the closing on June 22d 1993, and the $8,500 now shown on her affidavit was for elective cosmetic surgery that she had done after leaving the husband in September, 1993. The $14,524 debt to New Haven Savings is for mortgage arrearage on her own property known as 24 Franklin Street which the husband never owned.
8. PERSONAL PROPERTY
 Each party shall retain any and all personal property now in his or her name and/or possession.
ROMEO G. PETRONI, JUDGE