[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dissolution of marriage action returnable to this court on August 29, 1995. The plaintiff wife, Laraine S. Milazzo seeks a dissolution of her marriage from her husband, John T. Milazzo. She also seeks sole custody of the parties' minor child Michael Milazzo. As part of her claims for relief she makes no claim for alimony or child support. She seeks a specific division of the marital estate and a particular schedule of visitation, all as stated in her claims for relief. Mr. Milazzo was not CT Page 9056 present throughout the proceedings. His conservatrix of the Estate and Person, his sister Sylvanna Garvey, his court appointed Guardian Ad Litem, was present on his behalf throughout the proceeding. On behalf of her Ward, Ms. Garvey seeks joint legal custody of the minor child, Michael Milazzo, with a specific proposed schedule of visitation. She also seeks an order of periodic alimony, terminable only upon one of the parties' death or remarriage. She seeks for Mr. Milazzo a specific proposed distribution of the marital estate. She offers no child support to be paid.
At the trial of this matter, the plaintiff presented testimony from herself and Eugene Piasetsky, a clinical neuropsychologist. The defendant provided testimony from Guy Milazzo, the defendant's brother and Sylvanna Garvey. Exhibits were entered.
The court finds that it has jurisdiction over the marriage. One party has resided in the State of Connecticut continuously for more than one year prior to the bringing of this action.
While the State of Connecticut was cited in as a party, it has filed a statement with this court that it has no interest in the proceedings.
Only the one minor child, Michael, has been born to the wife since the date of the marriage. The court finds (in accordance with findings hereinafter) that the marriage between the parties has broken down irretrievably with no reasonable hope for its reconciliation.
The defendant is 43 years old. At the time of his marriage to the plaintiff he was employed by the Amtrak railroad. He had a high school education. During the marriage, until December 3, 1993. Mr. Milazzo worked full-time for the railroad. He was a consistent worker, never missing any significant time from his employment. He contributed his wages to the marital estate, for the payment of bills, services and the accrual of assets. On December 3, 1993, Mr. Milazzo, the driver and sole occupant of his vehicle had a one-car accident. No medical records were introduced at trial but the testimony, uncontradicted, indicates that "alcohol was involved." Mr. Milazzo suffered a traumatic brain injury (TBI) as a result of that accident. The expert testimony of Dr. Piasetsky, Mrs. Milazzo and Ms. Garvey all confirm that the TBI has rendered Mr. Milazzo unable to work in CT Page 9057 the competitive marketplace. He is the recipient of disability income, as indicated on his financial affidavit presented to the court at the time of hearing. He has no other sources of income. Mr. Milazzo has a high school diploma and two years of college education.
As a result of his traumatic brain injury, Mr. Milazzo's injuries have not only caused an inability to work, but have also impaired his ability to live independently. Immediately following the accident, Mr. Milazzo was hospitalized at the Hospital for Special Care in New Britain. Approximately six months later he was released to Gaylord Convalescent. Besides healing services, Mr. Milazzo underwent significant physical therapy. At the time that Gaylord was ready to release Mr. Milazzo, he did not go back to his home. The prospect of the responsibilities of a full-time job, caring for an infant child, and also caring for a disabled husband was too overwhelming for Mrs. Milazzo. While she was offered help by her husband's family, the court finds that Mrs. Milazzo already felt burdened by the hectic, stressful and burdensome life's schedule prior to Mr. Milazzo's release, and the prospect of his omnipresence at home was just too oppressive for her. Mr. Milazzo went to live with his parents and he has resided there ever since. His siblings have been extremely supportive and helpful to his parents. However, his continued presence in his parent's home poses long term problems. His parents are in their late 70's. They lack the physical strength to assist him if he falls (which has occurred). The relentless march of time will, inevitably, overtake their ability to care for him indefinitely.
Mrs. Milazzo is uniquely situated to evaluate and understand what her husband's needs are for the creation of an assisted living environment for him. Mrs. Milazzo is educated and trained as an occupational therapist. Premaritally, she attained a BA Degree from Boston College in Special Education and Speech Science and a Master's Degree from University of Connecticut in Speech Language Pathology. During the marriage, in December, 1993, she also attained a Master's Degree in Marketing Management, funded by her employer. During the marriage, Mrs. Milazzo first worked at the Hospital for Special Care, having started there as a speech pathologist. She was earning $34,000 at the time of marriage as the Director of Language Disorders. While expressing some concern for her own economic future in a health care profession where the watchword is "managed care," Mrs. Milazzo has, to date, successfully survived the hospital's CT Page 9058 various reorganization and downsizing efforts; indeed, she has steadily been promoted and financially rewarded with consistent salary increases. She is presently the Director of External Relations, a senior management position, earning $104,988 per year.
Mr. Milazzo's needs require a one-floor living environment with some retrofitting for ease and secure use of the home, particularly in the bathroom and kitchen. Dr. Eugene Piasetsky, the clinical neuropsychologist who evaluated Mr. Milazzo, testified (and Mrs. Milazzo essentially concurred) that Mr. Milazzo will require assistance for several hours each day from a personal care attendant. It is important to note that Dr. Piasetsky's expert opinions were offered to the court by Mrs. Milazzo. Optimally, initially, the level of skill of his caregivers would be advanced so that predicted regression, orientation to the community, and other similar issues could be appropriately addressed. The cost of this (in addition to the normative costs for shelter) have been estimated at $10-25.00 per hour per nonskilled attendant serving and $35-45.00 per hour for skilled services. Nominal recreation fees would also be anticipated. In the absence of these services, or family support such as he currently has, it is likely Mr. Milazzo would have to be institutionalized.
Mr. Milazzo's disability income results in him being disqualified from the Federal government's current means test for assistance. A significant amount of time was spent at trial discussing a proposed government program of waivers which might, or might not. assist an individual such as Mr. Milazzo to procure his necessary services with Federal financial assistance, without being income eligible under Medicaid. However, this testimony essentially all amounted to conjecture, because (1) the Federal program is not yet in place, and, (2) there is nothing probable about the prospects of Mr. Milazzo's ultimate eligibility.
Since the time of the birth of the minor child, Michael, Mrs. Milazzo has been his sole support. He presents no special needs to her. Day care facilities are available on site at her place of employment, Hospital for Special Care. Michael has regularly visited with his father. He is transported to his grandparents' home and sees his father there. Michael is not left in the sole care of his father. Most often, his Uncle Guy, John Milazzo's younger brother, is present for the visitation. Guy has also assisted with the transportation for visitation when he is not CT Page 9059 working. Essentially, the caretaking of Michael has been Mrs. Milazzo's responsibility, and, she has made all developmental decisions for the youngster. While on Mr. Milazzo's behalf, Ms. Garvey seeks joint legal custody, this position is untenable. Mr. Milazzo's condition requires that a guardian be appointed for him before this court, and, a Conservatrix in the world at large. Realistically, such a restricted individual, who has little or no communication with Mrs. Milazzo cannot be granted joint legal custody.
The disputes over transportation of Michael for visitation appear to be symptomatic of larger communication problems between Mrs. Milazzo and her husband's family. While they, particularly Guy, have been of great assistance in facilitating visitation transportation, it is not a role for them, that can be court ordered by this court, as Mrs. Milazzo indirectly requests when she seeks to be relieved from transportation responsibilities. The greater Milazzo Family is not a party here. That they have stepped into the breach, repeatedly in their various ways that they have cared for and nurtured John, is virtuous conduct that will not be indirectly or inferentially compelled by the structure of these court orders.
The court assigns values to the assets of the marriage. Two pieces of real estate are marital assets: 55 Wildlife Drive in Wallingford and 30-02 Trafford Street, Meriden. The Meriden property is a condominium unit which Mrs. Milazzo owned prior to the marriage. After the parties purchased the Wallingford home, the Meriden unit became a rental property. It is currently unoccupied however, that is temporal; it is normally income productive at the rate of $625-650.00 per month. Based on the credible evidence before the court, the court finds its value to be $65,000. The Wallingford property was purchased by the parties during the marriage. The court finds its value to be $230,000.
As to the balance of the marital assets, the Subaru Outback, the Dime Savings and Checking Accounts, the life insurance, Travelers and Beneficial Standard Tax Sheltered Annuities, the Hospital for Special Care pension and the GBFCU Savings, the court finds their values to be as stated on the parties' respective financial affidavits. The defendant's pension is in pay status as disability pay and therefore no value is attached to that. The parties have no debt.
After the defendant's accident, the plaintiff was appointed CT Page 9060 the defendant's conservatrix (until she was replaced by Ms. Garvey). During that tenure, Mrs. Milazzo decided to position Mr. Milazzo to render him Medicaid eligible. She transferred his interest in the Wallingford property out of his name, so that she presently holds title solely, rather than jointly. She dissipated marital assets to meet income/asset eligibility guidelines. However, much of the utilization of the funds spent down went to the payment of marital obligations. She took $7,000 from a joint tax refund, $3,000 from her tax sheltered annuity, and $8,000 from checkings, savings and mutual funds accrued during the marriage and some stock owned by her premaritally and utilized it, as follows: $5,000 paid down her auto loan, $7,000 paid down the second mortgage on the Wallingford home and the balance to pay down debts, some in her name, and, some in her husband's. This spend down resulted, she understood, in Mr. Milazzo being Medicaid eligible.
Currently, Mrs. Milazzo feels no duty to support her husband. She feels she has her hands full with their son, and, her husband has other resources: Medicaid and his family.
The duties of support of one's child and children is elementary. Mr. and Mrs. Milazzo have a joint duty to support their child, Michael. Mr. Milazzo, who is not self-supporting seeks support from his wife. Mrs. Milazzo seeks to limit her alimony payments, if any are ordered, to a specific period of time. The court finds Mrs. Milazzo has the ability to pay alimony. The court finds Mr. Milazzo has the financial need for alimony, and, that he will never attain self-sufficiency. The court finds Mr. Milazzo contributed significantly to the marital estate until he became disabled. The court finds, under the circumstances of this case, no authority to time limit Mrs. Milazzo's duty to pay alimony to Mr. Milazzo. Watson v. Watson,20 Conn. App. 551, 557, 568 A.2d 1044 (1990).
Having carefully considered the credible evidence and the statutory criteria for the dissolution of marriage, custody (and visitation), child support, alimony (C.G.S. § 46b-82), and the assignment of interests in the marital estate (C.G.S. §46b-81), as well as counsel and expert witness fees, the court orders:
1. A dissolution of marriage.
2. Sole custody of the minor child, Michael, to his mother, CT Page 9061 with reasonable and liberal rights of visitation in his father. Mrs. Milazzo is to drop off and pick up Michael for visitation.
Visitation shall be as follows:
One weekend day (unless the minor child is away for the weekend) for no less than three hours; alternating legal holidays, alternating years. This includes alternating Christmas Eve and Christmas Day, for no less than three hours.) Further visitation as the parties shall agree. The father shall always have visitation on Father's Day and his birthday.
3. The court finds that the child support guidelines provide for child support from the defendant to the plaintiff in the amount of $65.00 per week.
Based upon the defendant's disability and the substantial costs attendant thereto. as the parties both requests the court deviates from the Child Support Guidelines.
No child support is ordered from the defendant to the plaintiff.
The plaintiff shall maintain health insurance for the minor child as it is available through her employment. She shall pay all of his reasonable and necessary health expenditures not paid by insurance.
4. The plaintiff shall pay to the defendant periodic alimony in the amount of $100.00 per week, terminable on the sooner event of either party's death, the defendant's remarriage or his cohabitation with a woman as defined by statute and case law.
5. The stipulation submitted by the parties regarding personal property is approved and made orders herein.
6. The plaintiff is the sole owner of the 1997 Subaru free and clear of any claim of the defendant.
7. By (Qualified) Domestic Relations Order, to be prepared by defendant's counsel, the defendant is the owner of the plaintiff's entire Beneficial Standard TSA (tax sheltered annuity). The court retains jurisdiction over this provision for the purpose of its effectuation.
8. By (Qualified) Domestic Relations Order, to be prepared by CT Page 9062 defendant's counsel, the defendant is the owner of the plaintiff's entire Travelers TSA (tax sheltered annuity). The court retains jurisdiction over this provision for the sole purpose of its effection.
9. The plaintiff is, and shall remain, the sole owner of the real estate at a) 55 Wildlife Drive, Wallingford, and, b) 30-02 Trafford Street, Meriden, free and clear of any claim of the defendant. She shall indemnify and hold the defendant harmless in regard to all expenses pertaining to those properties, including the note(s) and mortgage(s) thereon.
10. The plaintiff within sixty (60) days of dissolution, as lump sum alimony, shall pay to the defendant $5,000.00.
11. No counsel fees are awarded to either party.
12. Each party shall designate the minor child of such life insurance currently in force, to a maximum of $100,000 by each respectively, during the period of the child's minority.
13. All other assets owned by each of the parties shall remain their's respectively free of any claim of the other.
14. Each party, except as recited above is responsible for their own respective liabilities, and, shall indemnify and hold the other harmless regarding the same.
Lynda B. Munro, Judge