LORETTA B. WATSON *v.* DAVID P. WATSON
(14363)

SHEA, CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued December 4, 1991—decision released April 21, 1992

*Francis J. Foley III,* with whom, on the brief, was *Kathleen R. Gravalec,* for the appellant (plaintiff).

*Timothy D. Bates,* with whom was *Robert J. Cary, Jr.,* for the appellee (defendant).

GLASS, J. This is an action for dissolution of marriage and for other relief brought by the plaintiff, Loretta B. Watson, against the defendant, David P. Watson. The action was commenced on November 10, 1987, and a hearing was held and a judgment rendered on December 27, 1988, by a state trial referee, *Hon. Eli Cramer,* acting as the trial court. The plaintiff appealed to the

Appellate Court, which set aside the judgment solely as to the financial issues and remanded the case for a full hearing on those issues only. *Watson* v. *Watson,* 20 Conn. App. 551, 560, 568 A.2d 1044 (1990). Pursuant to the remand order, the trial court, *Axelrod, J.,* conducted a hearing and, thereafter, rendered judgment. The plaintiff again appealed to the Appellate Court and we transferred the case to this court pursuant to Practice Book § 4023.

On appeal, the plaintiff claims that the trial court: (1) improperly concluded that the defendant's conveyance of his interest in the marital home to two children of the marriage was not fraudulent as to the plaintiff; (2) abused its discretion in failing to award the plaintiff any money or property to represent her interest in the real property owned by the defendant; (3) abused its discretion in failing to award the plaintiff sufficient alimony and support in light of her health problems and limited earning capacity; and (4) abused its discretion in failing to award the plaintiff adequate counsel fees with respect to the first trial, the appeal of the first decision and the trial of the case on remand. We reverse and remand the case for a new hearing.

The facts that provided the basis for the prior remand of this case are set forth in the Appellate Court's opinion, *Watson* v. *Watson,* supra. On remand, the trial court found that the marriage between the plaintiff and the defendant had been dissolved by the previous trial court judgment and that each party was equally at fault for the breakdown of the marriage. In addition, the court found the following facts, which are relevant to this appeal. The plaintiff and the defendant were married in Cranston, Rhode Island, on June 26, 1971. Three children were born of the marriage: Leslie Anne Watson, born March 11, 1972; Heidi Lynn Watson, born July 13, 1973; and Amy Beth Watson, born October 29, 1975. The plaintiff graduated from college in

June, 1970, and was employed thereafter as a school teacher in Rhode Island. She continued to work as a school teacher until the birth of the parties' oldest child. The plaintiff is not licensed to teach in Connecticut.

In March, 1973, the defendant's parents conveyed to him title to one acre of land, upon which the parties built their home. The plaintiff and the defendant lived with their children in a mobile home near the site for approximately three years while the house was being constructed. The plaintiff cashed in the pension plan from her teaching job and used the funds to purchase exterior shingles for the house. The plaintiff saved $14,000 from other sources, which she also contributed toward the construction of the house. The plaintiff assisted in the physical construction of the house as well, staining floors, papering walls and painting subflooring. The defendant, his father and the defendant's uncle did most of the construction work. The defendant's father donated much of the material used to construct the house.

The parties' youngest child, Amy, has been diagnosed as autistic and requires constant care. When Amy was approximately two and one-half years old, the town of Preston started paying the plaintiff $35 per day to transport Amy to Manchester for care and treatment. The plaintiff cleaned homes in Manchester during the day until it was time to pick up Amy. This pattern continued for approximately seven years until 1985, when Amy was placed in Benhaven, a private institution.

At the time of the dissolution hearing in December, 1988, the plaintiff had a net weekly income of $157.50. She had assets of $1760.38 and liabilities of $1135. The plaintiff was also the beneficiary of a trust fund established in 1984.[1] The plaintiff has osteoarthritis of the

---

[1] The trial court did not make a finding as to the benefit, if any, that the plaintiff received from the trust fund. The defendant claims that the trust fund has a value of $14,000.

knees, and as a result, in 1986, she had a total knee replacement and now has an artificial joint in her left knee.

The defendant attended Mitchell College in New London, where he received a two year pre-engineering degree. During the entire period of the marriage, the defendant was the only full-time employee on his parents' dairy farm. He worked from 7 a.m. to 9 p.m. every day except Sunday, when he spent approximately four hours at home in the afternoon. The plaintiff and the defendant never took a vacation, and the defendant took only four or five days off from work during seventeen years of marriage. After the plaintiff and the defendant were married, the defendant received $30 net weekly pay for approximately one year. The defendant's net pay increased to $60 per week for two years, and then to $80 per week for approximately one and one-half years. His net pay then increased to $200 per week for approximately two years and then to $250 per week from approximately 1982 through 1985. The defendant's net weekly pay finally increased to $362.17, the amount he was earning at the time of the dissolution hearing. For a period of five or six years between 1972 and 1981 or 1982, the parties received food stamps.

In December, 1988, the defendant had personal property valued at $5000, stocks valued at $1062.50, and fractional interests in the following real properties other than the marital home: (1) the Woolworth Farm; (2) the Frink Farm; and (3) the South Long Pond, Ledyard property. The trial court made the following findings of value as to these real estate interests.[2] The

[2] The trial court concluded, pursuant to *Sunbury* v. *Sunbury*, 216 Conn. 673, 583 A.2d 636 (1990), that all property in the marital estate on the date of dissolution should be considered in making the property assignments pursuant to General Statutes § 46b-81 and that the values assigned at the December, 1988 dissolution hearing should apply. In *Sunbury*, this court construed § 46b-81 (a) and General Statutes § 46b-82 as follows: " 'In the

Woolworth Farm, which consists of approximately 208 acres, was valued at $349,000 by agreement of the parties. The property was acquired by the defendant's parents in January, 1987, and placed in their names and the names of the defendant and his two sisters. The defendant's one-fifth interest in this property was valued at $69,800. The 120 acre Frink Farm was valued, also by agreement of the parties, at $269,000. This property was purchased by the defendant's parents in 1978 and title was put in the names of the defendant and his sister, Lucille. The defendant's one-half interest in this property was valued at $134,500. The South Long Pond property was given to the defendant and Lucille by an aunt in 1946. The trial court valued this property at $156,000. The defendant's one-half interest in this property was valued at $78,000. The South Long Pond property is subject to a lease of $60 per year that will expire in approximately 1996.

## I

The plaintiff first claims that the trial court improperly concluded that the defendant's conveyance of his

absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce would be the proper time as of which to determine the value of the estate of the parties upon which to base the division of property.' " Id., 676. While the hearing on remand was pending, the defendant conveyed his one-fifth interest in the Woolworth Farm to his sisters. The defendant also executed a mortgage deed to his parents for $25,000 on the marital home. Because the defendant made these transactions after the entry of the dissolution decree, while this case was on appeal, the trial court properly treated the defendant's interest in these properties as it existed on the date of the dissolution. In *Sunbury* this court concluded that an increase in the value of the property did not constitute an exceptional intervening circumstance that would allow the trial court to value the property as of the date of the remand hearing. Similarly, in the present case, the trial court could reasonably have concluded that the plaintiff did not show the requisite exceptional intervening circumstances. We note, however, that on remand, the plaintiff may avail herself of the procedure established by General Statutes § 46b-86, which authorizes the trial court to modify alimony and support orders after the entry of a dissolution judgment "upon a showing of a substantial change in the circumstances of either party . . . ."

interest in the marital home to the couple's two oldest daughters was not fraudulent as to the plaintiff. The plaintiff argues that the trial court exceeded the scope of the Appellate Court's remand order by reconsidering the state trial referee's conclusion that the conveyance was fraudulent. The plaintiff further contends that even if this court concludes that the trial court did not exceed its authority on remand, it nevertheless erred in concluding that the conveyance was not fraudulent as to the plaintiff.

In the previous judgment rendered by the state trial referee, the defendant had been ordered to pay periodic, nonmodifiable alimony to the plaintiff in the amount of $35 per week, terminable after three years. The state trial referee ordered that the deed transferring the marital home to the defendant's daughters be set aside and that the house revert to the defendant. The plaintiff was given exclusive use of the house until July 13, 1991, when Heidi would reach 18 years of age, at which time the plaintiff would have to relinquish possession to the defendant. The state trial referee also ordered the defendant to pay the plaintiff $80,000 in two installments of $40,000 each, the first installment to be made within three months of the date that the plaintiff vacated the house, and the second installment to be made within two years thereafter.

The plaintiff appealed the state trial referee's financial orders to the Appellate Court. The Appellate Court agreed with the plaintiff that "[n]otwithstanding the great latitude accorded to the trial court in awarding alimony and assigning property . . . the trial court could not reasonably have concluded as it did with respect to the alimony award." *Watson* v. *Watson,* supra, 554. The Appellate Court remanded the case to the trial court for a new hearing on all financial issues.[3]

_____

[3] The Appellate Court stated: "We cannot properly limit our remand to the issue of periodic alimony. The issues involving financial orders are

On remand, the trial court found that on November 3, 1987, the defendant had quitclaimed his interest in the marital home to his two oldest daughters, reserving a life estate for himself and the plaintiff.[4] The trial court found further that there was no consideration for this transfer. At the remand hearing, the defendant claimed that he had made the transfer to benefit and protect his children and to give the plaintiff an interest in the property. The plaintiff testified that the defendant had conveyed the property because he had become aware that she intended to file for divorce.

The trial court ordered that the defendant pay the plaintiff periodic alimony of $75 per week. The trial court also ordered that the defendant convey to the plaintiff his life interest in the marital home, free and clear of all liens and encumbrances, subject only to the title in his daughters. The plaintiff was also awarded all of the furniture in the house. The remaining real property was assigned to the defendant.[5]

---

entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . ." (Citations omitted; internal quotation marks omitted.) *Watson* v. *Watson,* 20 Conn. App. 551, 557, 568 A.2d 1044 (1990).

[4] On remand, pursuant to a motion filed by the plaintiff, the trial court made the parties' daughters, Leslie Ann Watson and Heidi Lynn Watson, codefendants in this action. Neither daughter, however, has filed a brief in this appeal.

[5] After the remand hearing, the trial court issued the following orders:

"(1) The defendant is ordered to convey by warranty deed to the plaintiff forthwith his life interest in the family home on Krug Road, free and clear of all liens and encumbrances subject only to the title in his two daughters, Leslie Watson and Heidi Watson, and the life interest in the plaintiff, Loretta Watson. All furniture in the family home is awarded to the plaintiff.

"(2) The defendant is ordered to pay the plaintiff $75 per week as periodic alimony.

"(3) The defendant is ordered to pay to the plaintiff as an allowance to prosecute the sum of $2,500 within six months of date.

"(4) There is presently a balance due to counsel for the minor child the sum of $1,684. The defendant is ordered to pay that amount.

"(5) All assets shown on the plaintiff's December 20, 1988 affidavit are

The trial court found that the defendant's convey-
ance of the marital home to his daughters had been
made with fraudulent intent and without consideration.

awarded solely to the plaintiff, including her interest in the trust fund estab-
lished in 1984.

"(6) Each party shall pay one-half of the liabilities shown on the plain-
tiff's financial affidavit dated December 20, 1988.

"(7) The defendant is solely responsible for paying all liabilities shown
on his December 20, 1988 financial affidavit, except for those liabilities that
are also listed on the plaintiff's affidavit for which the Court has ordered
that the parties pay equally. Those liabilities that are the sole responsibil-
ity of the defendant, the Court further orders that he hold the plaintiff harm-
less therefrom.

"(8) Except for the family home on Krug Road, all other real estate owned
by the defendant as shown on his December 20, 1988 financial affidavit is
awarded solely to the defendant.

"(9) The stocks and bonds shown on the defendant's financial affidavit
are awarded solely to the defendant. Further, the 1973 lawn tractor shown
on the defendant's financial affidavit is awarded to the defendant unless
said lawn tractor is at the family residence as of December 20, 1988, in
which event, it is awarded solely to the plaintiff.

"(10) The defendant is ordered to pay to the plaintiff as support for Leslie
and Heidi the sum of $40 per week per child. When Leslie reaches age 18,
the support order for Heidi shall be automatically increased to $60 per week.

"(11) No support order is entered for Amy. The plaintiff shall continue
to receive and administer the social security award which is for the benefit
of Amy. The defendant is to furnish medical insurance for the benefit of
Leslie and Heidi and any unreimbursed or uncovered medical expenses are
to be shared equally between the parties.

"(12) Custody of Leslie and Heidi is awarded to the plaintiff with rea-
sonable rights of visitation awarded to the defendant.

"(13) The defendant is responsible for paying the full tuition costs for
the benefit of Heidi at St. Bernard's School.

"(14) A contingent wage execution is ordered.

"(15) The defendant is ordered to pay appraisal fees in the amount of
$1,000 within six months of date to the plaintiff.

"(16) The defendant shall cooperate and execute any and all documents
to enable the plaintiff to elect medical coverage under his medical insur-
ance plan for the maximum period allowed or until the plaintiff becomes
eligible for medical benefits under a medical coverage plan maintained by
a future employer of the plaintiff, whichever occurs first. The cost for such
coverage under the defendant's insurance policy shall be paid by the plain-
tiff. Any unreimbursed or uncovered medical expenses shall be the sole
responsibility of the plaintiff. Any explanations of benefits for payments
received by the defendant for claims made by the plaintiff shall forthwith
be forwarded to the plaintiff."

The trial court concluded, however, that the plaintiff had failed to prove the other elements necessary to set aside the conveyance.[6] "The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . The party seeking to set aside the conveyance need not satisfy both alternatives." (Citations omitted.) *Tyers* v. *Coma,* 214 Conn. 8, 11, 570 A.2d 186 (1990). "Whether the conveyance in question was fraudulent is purely a question of fact. . . . Fraudulent intent must be proved, if at all, by clear, precise and unequivocal evidence. . . . This standard of proof applies to intra-familial conveyances." (Citations omitted; internal quotation marks omitted.) Id.

In applying the first test, the trial court found that the defendant's transfer of title in the family home to his daughters had been made without substantial consideration. The trial court concluded, however, that the plaintiff had failed to prove that the defendant was rendered unable to meet his obligations as a result of the transfer and, therefore, she had not satisfied the first standard for setting aside a conveyance as fraudulent. In determining whether the plaintiff had satisfied the second test, the trial court found that the conveyance had been made with fraudulent intent but concluded that, because the plaintiff had failed to prove that the grantees participated in the fraudulent intent, the conveyance could not be set aside on that basis either.

---

[6] General Statutes § 52-552 provides: "All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

In the plaintiff's amended complaint, she requested that the conveyance be set aside and be declared null and void as to her and that she be awarded exclusive use and possession of the family home. In her brief, however, the plaintiff states that she did not seek that the conveyance be set aside so that she could be awarded the marital home, but rather, sought that the marital home be included in the marital estate so that she could be awarded a monetary amount representing her equitable share.[7] We conclude, therefore, that the plaintiff has effectively abandoned her claim that the conveyance should be set aside.[8]

We now consider the plaintiff's claim that the trial court should have included the value of the family home in the marital estate so that she could be awarded a monetary amount representing her equitable share of the property. We conclude that the value of the family home should properly have been included in the marital assets even though the trial court concluded that the plaintiff failed to satisfy the second prong of either test for setting aside the conveyance.

[7] In a footnote to her brief, the plaintiff states: "This court should note that the wife did not seek that the conveyance be set aside so that she could be awarded the marital home. Rather, she sought that the marital home be included as an item in the marital estate, so that she could be awarded a monetary amount representing her equitable share of the marital home. See *Miller* v. *Miller,* 22 Conn. App. 310, 577 A.2d 297 (1990)."

[8] The trial court found that the defendant had sufficient assets other than the marital home to satisfy his obligation to the plaintiff. The plaintiff, relying primarily on *Gaudio* v. *Gaudio,* 23 Conn. App. 287, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990), argues that in the context of a dissolution action, a party seeking to set aside a conveyance as fraudulent need not prove, under the first test for setting aside a conveyance, that the transfer rendered the transferor unable to meet his obligations. We need not address this argument, however, since we conclude that the plaintiff has abandoned her claim that the defendant's conveyance of the marital home should have been set aside. We note, moreover, that at oral argument before this court, the plaintiff conceded that she had not objected to the relitigation on remand of the issue of whether the conveyance was fraudulent.

In *Miller* v. *Miller*, 22 Conn. App. 310, 577 A.2d 297 (1990), the defendant and his brother each owned a one-half interest, valued at $312,500, in two separate corporations and the realty upon which stores owned by those corporations were located. The defendant transferred his interest in each of the properties to his brother without consideration. The trial court concluded that the transfers had been fraudulently accomplished in order to deprive the plaintiff of her interest in the marital assets. The trial court set aside only one of the transfers, however, ordering that the defendant pay to the plaintiff the amount of his interest, as determined by the trial court, in the other transferred property. The defendant appealed, claiming that the trial court had improperly awarded the plaintiff a monetary amount representing the defendant's interest in the one transferred property when the trial court had not set aside the transfer. The Appellate Court upheld the remedy fashioned by the trial court. Id., 315.

We agree with the Appellate Court in *Miller* that the trial court in a dissolution action may properly consider as part of the marital estate property that has been fraudulently transferred even though for some reason the trial court has chosen not to set aside the transfer. Such an outcome prevents a party to a dissolution action from inequitably benefitting from his fraudulent transfer of real property by reducing the assets that would otherwise be included in the marital estate and available for assignment pursuant to General Statutes § 46b-81. The trial court in the present case found that the defendant's conveyance of the family home to his daughters was made without substantial consideration and with fraudulent intent. Accordingly, we are persuaded that the value of the family home should properly have been included in the marital assets.

## II

The plaintiff next claims that the trial court abused its discretion in not awarding her any amount of money or property representing her interest in the real property owned by the defendant. The plaintiff was awarded a life estate in the marital home, which has a fee simple value of only $160,000, whereas the defendant retained his fee simple fractional interests, valued at $282,300, in the remaining real property. The plaintiff was also awarded the assets listed on her financial affidavit, totaling $1760.38, and her interest as beneficiary of a trust fund, the value of which was not assessed by the trial court. The defendant was awarded the stock listed on his affidavit valued at $1062.

Other than the marital home, to which the plaintiff made a direct financial contribution, the real properties owned by the defendant were acquired by gift, either from his parents or, in the case of the South Long Pond property, from his aunt. The defendant argues, therefore, that the "[p]laintiff's efforts to care for and raise a family . . . are unrelated to the acquisition or preservation of [this] real estate."

"This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution rest in the sound discretion of the trial court. . . . Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties . . . no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations the financial circum-

stances, both actual and potential, are entitled to great weight." (Citations omitted; internal quotation marks omitted.) *Valante* v. *Valante,* 180 Conn. 528, 530–31, 429 A.2d 964 (1980).

"In order to conclude that a trial court abused its discretion in a domestic relations case we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." *Weiman* v. *Weiman,* 188 Conn. 232, 234–35, 449 A.2d 151 (1982). The trial court, in making the property assignment, stated that it had "carefully considered all of the relevant statutory criteria." Considering the trial court's findings regarding the marital assets at the beginning of the marriage and at the time of dissolution in light of the statutory factors enumerated in § 46b-81, however, we are unable to discern how the trial court could reasonably have concluded as it did in this case.

When the plaintiff and the defendant were first married, the defendant owned only a one-half interest in the South Long Pond property. He was employed on his parents' farm at a very modest rate of pay. Section 46b-81 authorizes the trial court to assign to either party to a dissolution proceeding "all or any part of the estate of the other." We have stated that "the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his [or hers]." Id., 234. "The bare legal title to property acquired or accumulated by the spouses during marriage often does not correspond to their real rights in such property." H. Clark, Law of Domestic Relations (1968) § 14.8, p. 450. The fact that the defendant, subsequent to his marriage to the plaintiff, received substantial real property from his parents in his name only does not operate to exclude this property from the marital assets. Cf. *North* v. *North,* 183 Conn. 35, 39, 438 A.2d 807 (1981) (property acquired by inheritance may be assigned under § 46b-81). These gifts of real

property were made to the defendant over the course of a seventeen year marriage during which the plaintiff made a substantial financial contribution toward the construction of the family home, served as the exclusive homemaker, provided care for three children, including a severely autistic child, and worked outside the home as a cleaning woman for ten years. The plaintiff's contribution both as a homemaker and a wage earner was thus integral to the financial survival of the marriage.[9]

The trial court found that the breakdown of the marriage was equally attributable to both parties. The assignment to the plaintiff of only a life use of the family home and to the defendant of the remaining real property interests, however, virtually ignored the contribution that the trial court found the plaintiff had made to the marriage. The trial court's failure to include the value of the family home in the marital assets no doubt contributed to this skewed division of property. Accordingly, we conclude that the trial court abused its discretion in this case.

While we conclude that the trial court did not properly consider the plaintiff's contribution toward the acquisition of the marital assets, including the family home, we recognize that the trial court must be accorded discretion in fashioning an equitable assignment of property. " 'The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases

---

[9] In 1978, the defendant was earning only $80 per week working on his father's farm. That year, the defendant was given a one-half interest in the Frink Farm, which, at the time of the dissolution hearing, was valued at $134,500. Nevertheless, for a five to six year period between 1972 and 1981 or 1982, the parties' income was so low that they qualified for and received food stamps from the town of Preston.

might be unable fairly to resolve the parties' dispute . . . .' " *Sunbury* v. *Sunbury,* 210 Conn. 170, 174, 553 A.2d 612 (1989). " 'While the trial court must consider the delineated statutory criteria, no single criterion is preferred over the others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . .' " (Citation omitted.) Id., 174–75. Accordingly, we remand this case to the trial court for a new hearing on all financial matters.[10]

The judgment as to all financial matters is reversed and the case is remanded for a new hearing.

In this opinion the other justices concurred.

---

[10] Because the trial court must consider all financial orders de novo, we do not consider the plaintiff's third and fourth claims concerning the sufficiency of the trial court's award of periodic alimony and counsel fees. As this court has previously stated: "[T]he trial court on remand could no more fashion just and equitable financial orders by reconsidering only the issue of [property distribution], than it could reassemble a broken vase with only one piece." *Sunbury* v. *Sunbury,* 210 Conn. 170, 173, 553 A.2d 612 (1989).