[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband, The parties were married on February 2, 1963 in Malverne, Long Island, New York. There are two children issue of the parties, Livia who is now 31 years of age and Tara who is now 30 years of age. The parties started dating when the plaintiff was 15 years of age and the defendant 18. They married two months before the plaintiff's nineteenth birthday. The defendant graduated from C. W. Post College in January, 1963, and the parties married prior to the defendant's entrance into Officers Training School (upon his enlistment in the Air Force). CT Page 9361
The parties came to Connecticut in 1973. The plaintiff describes the years 1973 to 1983 as the happiest years of their marriage. It has been the defendant's extramarital affairs that has caused the breakdown of their marriage. The final breakdown occurred in 1986. The plaintiff concluded that the marriage was finally broken down upon being advised by the defendant of his affair with Diane Hornstein, a fellow employee. It was in April of 1986 that the defendant first moved out of the house to a rented apartment in Southport Woods. His sublease expired in September, 1986, and the plaintiff came back to the marital home saying he wanted to give the marriage another try. However, Diane Hornstein still remained in the picture, and in November the plaintiff told the defendant that he would have to leave. However, it was agreed he would stay for the holidays and in February, 1987, he moved to Woodfield Village in Fairfield to a rented condominium. During this period the plaintiff continued to reside in the marital home on Split Rock Road in Trumbull.
Feeling that it was necessary to get "a hold" and "do something", the plaintiff looked at condominiums in Trumbull, and she and the defendant purchased a condominium at 135 Mayfield Drive in Trumbull in March, 1988. About that time, the defendant's lease at Woodfield Village expired and he moved into the Split Rock Road house. At that time he was working for Tie Communications. He was subsequently terminated by Tie and moved to Portland, Oregon with Segment Computers. He was very unhappy there and after five months left that job and, because the house at Split Rock Road was rented, moved into plaintiff's apartment on Mayfield Drive. He stayed occupying the second bedroom in plaintiff's condo until 1992 when he moved into a rented condominium at the Inwood with his mother. In 1991 the house on Split Rock Road was sold and the proceeds of sale added to the Fidelity Investments account. In March, 1993, the defendant purchased a condominium in Woodfield Village with money he received from his mother. His mother is now in a home in Florida, and he is living with his current companion, Mary Phillips, who contributes $500 per month to the household expenses and contributes to the food expenses.
The plaintiff graduated from high school in 1962 and was married immediately thereafter. In 1986 she attended Katherine Gibbs Secretarial School for a five months course and now works part time as a secretary for Congregation B'Nai Torah. She has held this job since 1991. In July, her pay was increased to $11.50 per hour. She works thirty-one hours per week from September to June and twenty-five hours per week during the months of July and August. There are about 21 Jewish and secular holidays each year for which she is not paid, but she does receive two weeks paid vacation. CT Page 9362
As the plaintiff has testified, she is pretty much self-taught. She has no strong computer skills. The computer program with which she is working at present is eight years old. She has had no training on word perfect. With her present position, she has no other benefits other than her vacation benefit. Her past work history consists of her first job in 1976 to 1978 working part time at G. Fox in sales for four hours per day, mostly from 10:00 a.m. to 2:00 p.m., when the children were in sixth and seventh grades. She then did informal modeling and promotional work for Stamford Macy's and G. Fox. This was strictly seasonal work and, again, for four hours per day. She did this as a self-employed individual for ten years, earning about $5,000 per year. After that she worked as a receptionist earning $15,000 per year. She next worked in the accounting office at Davidoff Partners in Westport for a year. She then worked for Werner Construction in Westport as a receptionist, then in the purchasing office and then as the president's executive secretary for eight months earning an annual salary of $23,000. That job terminated shortly before her beginning with Congregation B'Nai Torah in 1991. Between Werner Construction and Congregation B'Nai Torah, she did "temp" as a receptionist.
The plaintiff is fifty-one years of age. She was diagnosed as a diabetic four months ago. She is not on any special medication but is on a special diet and exercise program. She complains of tiring and blurred vision from time to time. She is predisposed to glaucoma and pressure behind the eyes. Medical insurance is a problem. She presently is covered through COBRA under the defendant's Dan Perkins Subaru at a cost of $184 per month. When that coverage expires, she will be able to obtain coverage through PHS which will not cover pre-existing conditions and will cost $400 per month.
The Fidelity account is a joint account. At present the defendant is paying the plaintiff's mortgage insurance and taxes on their condominium at Mayfield Drive in Trumbull from the account. He also was paying her health insurance, car insurance and homeowners insurance from this account and has been giving her $750 per month from this account. The last two months, however, he has been paying the car and homeowners insurance the mortgage and taxes on the condo and $1000 to the plaintiff but she has been paying the medical insurance directly. The amount paid out from the Fidelity account on her behalf amounts to about $31,000 per year. Of this amount, $22,000 per year is for the mortgage and real estate taxes. The present principal balance of the mortgage is about $179,000. The original mortgage principal was $197,000 and the purchase price was $242,500. The plaintiff values the condominium today at $190,000. CT Page 9363
The defendant is fifty-four years of age. His health is good. He lives in a condominium owned by him at 196 Glengarry Road in Fairfield, Connecticut, which is located in Woodfield Village. He graduated from C. W. Post College, Long Island, New York, in 1968. He has taken two courses toward a Masters degree at the University of Minnesota. He served in the United States Air Force rising to Captain from 1963 to 1968. In 1968 he joined Honeywell as a sales representative and stayed in Honeywell's employ for 19 years and ten months rising to Director of National Account Sales. Thereafter he was employed by TIE Communications, Inc. of Shelton, Connecticut for two years, from 1987 to 1989. He was President of the Technicom Division with the assigned objective of turning its business around and achieving profitability. This was accomplished in one year's time and the business sold. Thereafter he became Vice President in charge of sales. This position terminated in the spring of 1989. The defendant then accepted a position with Segment Computers in a sales position which caused his move to Portland, Oregon. This was at an annual salary of $85,000 plus bonus of $10,000. This job terminated in a short time and the defendant returned to Trumbull. His next position was with NEC America on Long Island in July 1990. His annual salary in this position was $125,000, his highest earnings from employment. This job also terminated in a relatively short period of time. Following this position, the defendant was self-employed as a business consultant and later a principal in a business known as Business Franchise Corporation of America in Westport earning $36,000 per year. This last year he has worked as an automobile salesman at Dan Perkins Subaru and then at Lexus of Westport, this last position terminating in April 1995. (See plaintiff's exhibit D.) He is unemployed at present. He has, however, been actively searching for new employment.
During the marriage, the plaintiff maintained the household, ran the errands, raised the parties' two children and did the housekeeping. She relieved the defendant of all routine matters so that he could devote his time to developing a career. She was supportive of the defendant in the advancement of his career. Such endeavors on the defendant's behalf shall be taken into account in the court's assignment of property. See O'Neill v. O'Neill, 13 Conn. App. 300 (1988).
Except for the period 1973 to 1993, the defendant has had numerous extramarital affairs. It serves no useful purpose to recite these affairs except to note as herein set forth. The defendant is wholly at fault for the breakdown of the marriage. Their friendship as two mature individuals has continued for the benefit of their grown children and out of concern of each of them for the other. This demonstrates the CT Page 9364 fine character of the plaintiff.
The dispute between the parties is as to the division of assets and the amount of alimony to be paid by the defendant to the plaintiff. The defendant at the time of trial was unemployed. As the evidence has demonstrated, he does have an earning capacity at a minimum of $36,000 per year. In the event his annual gross income from employment exceeds $41,500, the plaintiff is entitled to return to court to seek an upward modification of the award of periodic alimony.
The bigger issue between the parties is the division of their property. It is the defendant's position that the equity that he has in his condominium in Woodfield ($60,000) and his Fidelity annuity account ($108,000) should not be included as marital assets since they were "secured by gift" from his mother after the breakdown of the marriage. (See defendant's financial affidavit, footnotes pages three and four and paragraph 3a of the defendant's claims for relief.) This is a novel concept certainly differing from our appellate court decisions on the definition of "marital assets." Indeed in considering a division of the property of the parties, it is all of the property of the parties at the time of the decree of dissolution that should be considered in dividing those assets in accordance with the criteria set forth in § 46b-81 of the General Statutes. Watson v. Watson, 221 Conn. 698, 708 (1992);Jackson v. Jackson, 17 Conn. App. 431, 434 (1989).
In dividing the property of the parties the court must also consider that at the time the condominium at 135 Mayfield Drive in Trumbull was purchased the defendant had promised that the mortgage upon that property would be paid off when the property at Split Rock Road in Trumbull was sold. This was not done, however. Instead, the money realized upon the sale of the Split Rock Road house was deposited into the parties' joint Fidelity investment account.
At the present time, the parties have been existing on the funds in the joint Fidelity account. Based upon the agreement of the parties, the court has entered interim orders until final judgment has been entered. Those interim orders are contained in the file and dated June 20, 1995.
The court has considered all of the criteria of §§ 46b-81 and 46b-82
and 46b-62 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, CT Page 9365 other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weimanv. Weiman, 188 Conn. 232, 234 (1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage on the plaintiff's complaint.
2. The defendant shall pay to the plaintiff periodic alimony in the amount of $1,000 per month until the death of either of the parties or the plaintiff's remarriage. This award is based upon the defendant's demonstrated minimum earning capacity of $36,000 gross annual earnings. As the evidence has demonstrated, however, he has had earnings in the past greatly in excess of this amount. He shall advise the plaintiff of any change in his employment status within forty-eight (48) hours and the plaintiff shall be entitled to seek a modification upward if the defendant's annual gross earnings from employment exceed $41,500.
3. The defendant shall convey to the plaintiff by quit claim deed executed within twenty (20) days of the date hereof all of his right, title and interest in and to the real property at 135 Mayfield Drive in Trumbull. The plaintiff shall be wholly responsible upon the existing mortgage upon said property and shall indemnify and hold harmless the defendant from any claim or demand thereon.
4. The real property at 196 Glengarry Road in Fairfield owned by the defendant shall be wholly his subject to the existing mortgage upon that property but free of any claim or demand by the plaintiff.
5. The Fidelity annuity account in the defendant's name shall be wholly his free of any claim or demand by the plaintiff. CT Page 9366
6. The plaintiff shall retain as her sole asset her Fidelity IRA account in the total approximate amount of $15,000 free of any claim or demand by the defendant.
7. The plaintiff shall retain as her sole assets her bank accounts, her furniture and other tangible personal property and her 1990 Honda automobile.
8. The defendant shall retain as his sole assets his bank accounts, his furniture and other tangible personal property and his 1992 Ford.
9. The parties shall divide equally their interests in USAA Limited Partnership and in Delphi Film Associates.
10. The plaintiff shall receive one-half of the defendant's pension from Honeywell and shall be named sole principal beneficiary of all payments available upon the defendant's death. The defendant shall execute the appropriate QDRO documents necessary to effectuate the equal division of this pension including naming the plaintiff as an alternate payee and survivor annuitant under the joint and survivor annuity option available to the defendant.
11. The defendant shall continue to provide medical insurance for the plaintiff through COBRA or otherwise at the defendant's expense and shall not impair the plaintiff's ability to have the coverage which she presently has under COBRA through the defendant's previous employment with Dan Perkins Subaru.
12. The defendant shall be responsible for the payment of any capital gains taxes now or hereafter owing on any gain realized on the sale of the marital home on Split Rock Road in Trumbull.
13. The defendant shall be responsible for paying any taxes, interest or penalties owing on any joint income tax returns previously filed by the parties and any costs incurred in connection with an audit of any such return, and the defendant shall indemnify the plaintiff and hold her harmless with respect to all such taxes, interest, penalties and costs.
14. The Fidelity IRA account in the approximate amount of $166,000 owned by the parties jointly shall be divided with the plaintiff receiving $65,000 from that account and the sum of $335,000 from the Fidelity investment account for the total amount of $400,000 CT Page 9367 from both parts of this account. The balance of the IRA account ($101,000+) and the balance of the Fidelity investment account shall be the property of the defendant.
15. Each party shall be responsible for his or her own liabilities and shall indemnify and hold harmless the other party from any claim or demand thereon.
16. The defendant shall pay to the plaintiff the sum of $10,000 as a contribution toward her counsel fees to be paid within thirty (30) days of the date hereof. The court, in making this award, has considered the provision of § 46b-62 of the General Statutes together with the criteria of § 46b-82 of the General Statutes. The court is mindful of its other orders pursuant to § 46b-81 of the General Statutes and believes such an award is fair and equitable under all the circumstances of this case.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE