[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 13606
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable to this court September 13, 1994. She also sought alimony, a property settlement, and other relief. The defendant husband admitted all of the allegations of the complaint in his answer. In his cross complaint, he also sought a dissolution of the marriage on the ground of irretrievable breakdown, alimony, and other relief.
The parties were represented by counsel; at trial, they submitted financial affidavits and written proposed orders. Each testified and introduced into evidence a number of documentary materials, including tax returns, appraisal reports, pension and annuity benefit statements. Counsel made oral argument.
From the evidence, findings are made as follows.
The parties married on October 14, 1972, in East Lyme, Connecticut. The wife has resided continuously in this state for at least one year before the filing of the complaint on September 6, 1994. There are no minor children issue of the marriage, and none have been born to the wife since the date of the marriage. Neither party is a recipient of public assistance, all statutory stays have expired, and this court has jurisdiction.
The wife is 49, in good health, and a high school graduate. She completed a one year practical nursing course, and has been a licensed practical nurse for more than 20 years. She is currently employed at a local hospital and earns $618[1]
per week gross and $403[2] per week net. She is a union member and has job-related medical insurance and pension benefits available, for which she contributes. Her pension benefits are vested.
The husband is 62 and a high school graduate by G.E.D. He suffers from depression for which he takes medication. He also has knee and other significant health problems. He was employed by the State of Connecticut as a mental health worker and supervised a sheltered workshop. He retired in 1989, and receives $275 per week gross income: state retirement ($175), CT Page 13607 and deferred compensation annuity ($100), with a total net after taxes of $235 per week. He is now eligible to receive social security retirement benefits which he estimates at $800 per month. He has not applied for such benefits, as he believes that he may be able to obtain higher benefits by way of disability after an anticipated operation on his knee.
This marriage of over 23 years duration has been essentially a marriage in name only for many years. Throughout the marriage, the parties kept separate bank accounts, and managed their financial affairs separately, although they did file joint income tax returns. They have not had sexual relations with each other for a long period of time, and have had little or no communication. They have had separate life styles and activities, and have drifted apart.
The wife claims that the marriage was broken down by the defendant's anger, hostility, lack of communication and coldness, and belittling of her. He claims that she was always badgering him until she got what she wanted. The parties separated in late December, 1994, when the plaintiff was ordered out of the marital dwelling in a pendente lite proceeding. Neither party made any significant effort to repair the marriage. The marriage has in fact been irretrievably destroyed, and each party must bear the responsibility for that breakdown.
The parties enjoyed a very modest life style. The husband was very frugal, to the point of buying second-hand clothing, and was able to save a substantial sum, over $69,000, during the marriage. In 1993, he received $93,486 from his mother's estate.
After the receipt of the inheritance and its deposit into his savings accounts, he withdrew almost all of the combined savings and placed most of the funds in a bank safety deposit box, and a smaller amount in a locked strong box in the home, all without the plaintiff's knowledge. He admitted that he did this because there was trouble in the marriage and the spouses `were not getting along'.
Apart from $8,500 he used to purchase an automobile for himself, $10,000 he used to purchase a automobile for the plaintiff and $10,000 in `general expenditures', he claims he lost the balance, approximately $135,000, in casino gambling and CT Page 13608 high stakes poker games. There was no credible evidence which tended to corroborate the level and extent of his gambling or the amounts claimed to have been lost. I draw an unfavorable inference from the defendant's refusal to answer certain questions, and I have grave doubts about his testimony as to the dissipation of this large amount of money and do not credit it.
Even if it is true, as the defendant testified, that he squandered approximately $135,000 on gambling, I conclude that the value of this fund should be properly included in the marital assets, for the purpose of distribution and assignment pursuant to General Statutes § 46b-81. I perceive no significant difference between this case where a defendant has removed or dissipated assets from the marital estate and placed them out of reach, and the case of a fraudulent conveyance which could not be set aside as to the grantees. See Watson v.Watson, 221 Conn. 698 (1992); Miller v. Miller, 22 Conn. App. 310
(1990). "Such an outcome prevents a party to a dissolution from inequitably benefitting [benefiting] from his fraudulent transfer of real property by reducing the assets that would otherwise be included in the marital estate and available for assignment. . . ."Watson v. Watson, supra, 221 Conn. 709.
Although the defendant testified he was obtaining counseling for his gambling from the Veterans' Administration, no credible evidence was introduced that the defendant's gambling was compulsive or that he was addicted to it.
The husband discloses the following assets on his financial affidavit.
 A single-family home, 186 Giants Neck, Niantic, Connecticut, value $ 50, 000 A. 1992 Mercury automobile, value 11, 500 A. 1968 boat and trailer 500 Savings and checking accounts which total 251 An Aetna deferred compensation annuity 64,982 Life insurance of $11,500 with no cash value -------- These assets total: $127,233
The annuity provides him with the $100 weekly income (payable quarterly) previously referred to, which amount may not be varied. According to the plan, however, beneficiary changes and assignments of a portion of the annuity (and quarterly CT Page 13609 payments) may be made by Qualified Domestic Relations Order (QDRO). The annuity was derived wholly through the defendant's employment as a result of his deferred compensation plan.
His single-family home was obtained by him through a divorce settlement and was worth approximately $9,000 at the time of the parties' marriage. I find that its present value is $57,000 and that the increase in value was in part due to some improvements all paid for and done by the defendant, and in larger part by appreciation over the years, due to inflation, etc.
The plaintiff discloses the following assets on her financial affidavit.
 A 1992 Dodge automobile, value $ 7,500 Savings and checking accounts, which total 5,208 An IRA account 1,623 The value of her employment-related pension plan 4,499[3]
Term life insurance of $11,500, no cash value -------- These assets total: $18,830
Except for the vehicle, whose purchase price was provided by the defendant as above noted, these assets were accumulated through the plaintiff's efforts.
The parties show no liabilities. Each party also reports very modest living expenses, and the wife has a weekly surplus of approximately $153 per week. The husband has a weekly surplus of $1 per week, and has available to him social security benefits as previously noted. Therefore, neither party is in need of support from the other.
The defendant enjoyed higher annual earnings than the plaintiff until his retirement in 1989. The tax returns indicate that the parties' incomes from all sources were about equal in 1990 and 1991, and the plaintiff's annual total income was greater than the defendant's in 1992 and 1993. I conclude that on the whole, the defendant's monetary contributions to the marriage and marital assets were greater than those of the plaintiff, while their nonmonetary contributions were about equal.
I also find that the plaintiff has paid to her CT Page 13610 attorneys for representation in this case a sum in excess of $10,000. Some of these services were incurred as a result of the necessity of plaintiff's counsel to obtain compliance by the defendant with various discovery requests. Indeed, Judge Hurley ordered, after a pendente lite hearing, that the defendant pay to the plaintiff the sum of $500 as counsel fees. The defendant has not complied with this order, and there is due the plaintiff the sum of $480 on account thereof.
I have considered all of the factors in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the evidence and my findings, and the following orders shall enter.
(1) A decree dissolving the parties' marriage on the ground of irretrievable breakdown.
(2) No alimony is awarded to either party.
(3) The following items are assigned to the plaintiff: her 1992 Dodge automobile, the tangible personalty in her possession; the bank accounts of $5,208, shown on her financial affidavit; her IRA account of $1,623; her hospital pension benefit plan and her term life insurance policy. She shall irrevocably designate the defendant as beneficiary of said life insurance policy and elect the 50 percent joint and survivor benefit, with the defendant as survivor beneficiary thereof. Said designation shall terminate if he predeceases her.
There is also assigned and vested in the wife a 33 percent interest in the defendant's Aetna annuity. In the event she predeceases him, then said 33 percent interest shall revert to him.
The defendant shall also execute and deliver to the wife a promissory note in the amount of $24,000 secured by a mortgage on the premises known as No. 186 Giant's Neck, Niantic, Connecticut. Said note and mortgage shall be due and payable on the first to occur of the following events: the defendant's death or remarriage, or sale or transfer of the premises, and shall be payable without interest, excepting however, interest shall accrue on the unpaid balance at the rate of 10 percent per annum after maturity until paid. The defendant shall maintain homeowner's insurance on the premises and name the plaintiff loss payee thereon and pay the real estate taxes on said CT Page 13611 premises. Failure to maintain said insurance or pay said taxes when due shall be a default of said mortgage and accelerate the maturity of the principal balance thereof.
(4) There is assigned to the defendant the following: the premises known as No. 186 Giant's Neck, Niantic, Connecticut, subject to the mortgage set forth above, and all of the tangible personal property and furniture and furnishings thereon; the 1992 Mercury automobile; the boat and trailer; the bank accounts shown on his financial affidavit, the remainder of his Aetna annuity after assignment of the wife's 33 percent interest, assigned to her as set forth in paragraph 3 above; and, his term life insurance policy, excepting he shall designate the wife thereon as irrevocable beneficiary.
There is also assigned to the defendant his state employees' retirement benefit, excepting that the plaintiff shall remain thereon as irrevocable survivor beneficiary. The designation of irrevocable beneficiary of the retirement benefit and life insurance policy shall terminate if the plaintiff predeceases him.
The wife shall remain a covered dependent on any health insurance coverage available to the defendant through his retirement benefits plan. In the event there is any expense for such coverage, as a result of the dissolution decree, this court shall retain jurisdiction thereof, to allocate this expense, or, to modify this order, as equity may require.
Qualified Domestic Relations Orders (QDROs) shall issue to effectuate the orders relating to the assignment of interests in the parties' retirement plans and the defendant's annuity. The court retains jurisdiction thereof until accomplished.
(6) The defendant shall pay to the plaintiff, toward her attorney's fees, the sum of $1,250 which includes the arrearage previously found due as a result of Judge Hurley's order, in equal monthly payments of $100 each commencing February 1, 1996, and the first of each month thereafter. I find that a denial of an award of attorney's fees would impair or undermine the other financial awards herein.
(7) All instruments necessary or incidental to the effectuation of the orders entered herein shall be completed and CT Page 13612 exchanged by counsel and the parties within thirty (30) days hereof.
Teller, J.