[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. At the time of trial, September 28, 1995[1], the parties had been married for 28 years. There are two children issue of the marriage, both of whom have reached their majority.
Both parties are teachers in the Wolcott school system, Mr. Masi, the defendant, for 27 years; Mrs. Masi, the plaintiff, for 15 years. Mr. Masi is 53 years old, and Mrs. Masi is 49 years old. Both are in good health. At the time of trial Mr. Masi's gross salary exceeded Mrs. Masi's by approximately $3,700 annually. The difference in their salaries is attributable to the dates when they commenced working as teachers. Mr. Masi began his employment about a year after the parties were married. Mrs. Masi began about 12 years later, her entry into the full-time workforce having been postponed during their children's early years. Mr. Masi has a bachelor's degree, and Mrs. Masi a master's degree plus 15 credits.
At issue between the parties are their respective shares in the former family home, whether alimony should be paid by Mr. Masi to Mrs. Masi, the division of their respective pensions and CT Page 3316 Mrs. Masi's share, if any, in savings bonds and a Prudential annuity held by Mr. Masi.
The parties built in 1971 what was to be the family home until Mrs. Masi left in November 1992. Since that time Mr. Masi has been residing there and paying the first mortgage, including approximately $400 per month extra on the principal, and all other carrying charges. At the time of trial the first mortgage was all but paid off. There is also a home equity loan which was taken out by the parties beginning in 1988 to finance various joint purchases. Mrs. Masi claimed at trial that approximately $6,500 of the present balance is attributable to purchases for the benefit of Mr. Masi alone.
The equity in the parties' former family home is $108,000. Accepting Mrs. Masi's testimony that $6,500 of the outstanding home equity loan is attributable to purchases for the benefit of Mr. Masi alone, he has more than made up for that amount by his extra payments on the principal of the first mortgage for the past three and one-half years while he has lived in the house alone. Therefore, the court believes that it is equitable to divide the equity of the house equally between the parties.
During the latter part of the 1980's Mr. Masi's mother gave him U.S. Savings Bonds which had a value of approximately $94,000 at the time of trial and certificates of deposit which he used to purchase a Prudential annuity with a value of approximately $28,000 at the time of the trial. The parties differed regarding the intent of Mr. Masi's mother, i.e., whether she meant these as gifts to the parties jointly or for the benefit of Mr. Masi alone. Connecticut case law, however, makes that purpose irrelevant in the division of assets which came into Mr. Masi's possession during the marriage. To paraphrase the leading case,Watson v. Watson, 221 Conn. 698, 711 (1992), "[t]he fact that the defendant, subsequent to his marriage to the plaintiff, received (bonds and certificates of deposit) from his (mother) in his name only does not operate to exclude this property from the marital assets". Excluding the former family home and the parties' respective pensions, their assets total $153,400. The U.S. Savings Bonds and the Prudential annuity make up $122,000 of this amount. There was no evidence that either party "contributed to" the acquisition, preservation or appreciation in value of these assets. Likewise, there was no evidence that either will have the opportunity for future acquisition of similar assets. The court concludes that all of these assets, including the assets received CT Page 3317 by the defendant as gifts from his mother during the term of the marriage, should be shared by the parties. See also Karen v.Parciak-Karen, 40 Conn. App. 697 (1996). Considering the criteria of § 46b-81 of the General Statutes, the court believes an equitable distribution of these assets would result in 55% being awarded to Mr. Masi and 45% being awarded to Mrs. Masi.
There were many positive aspects to the parties' marriage. They raised two daughters together, putting both of them through college. They supported each other in the attainment of their educational and professional goals. They shared their finances for the support of their family. In addition to being the primary caretaker of the children and housekeeper for the family, Mrs. Masi contributed her earnings to the families' support.
In addition to the positive aspects of the parties' marriage, there was a flaw, ultimately fatal, in their lack of communication. Mr. Masi became active in local politics while Mrs. Masi had little interest in that aspect of his life. Mrs. Masi testified that sometime during the late 1980's she decided to make a life for herself outside the marriage, participating in activities which she enjoyed, and which Mr. Masi did not share. Mr. Masi seems to have understood this time in Mrs. Masi's life as a "midlife crisis" and reacted negatively to it, feeling that it was a negative reflection on him and that Mrs. Masi was inattentive to him. The gap in the parties' perceptions of their respective roles in the marriage is best exemplified by contrasting Mrs. Masi's testimony to the effect that she "always gave in" to what Mr. Masi wanted with Mr. Masi's testimony that "what Linda wanted, she got".
Mrs. Masi acknowledged in her testimony a sexual relationship with another man which began approximately six months prior to her leaving the family home and continued for a time thereafter. In other words, this relationship began and continued for a period while the parties were living together in their family home. Though the marriage may have been moribund prior to this time, the court cannot say that this affair did not contribute to the dissolution of the marriage. At the very least, as a practical matter, it contributed to Mrs. Masi's ceasing to reside with the family and closed the door on any attempts the parties might have made to reverse the effects of their history of poor communication.
Both parties have vested pensions through the Teachers' CT Page 3318 Retirement System. These are pensions of the "defined benefit" variety (rather than "defined contribution"), in which the vested pensioner is guaranteed, at the time of his or her retirement, a specific amount of money based usually, as in this case, on age, length of service and the employee's three highest-paid years of service. The court was provided with statements of the parties' respective projected benefits at age 60 but not with a calculation of the discounted present value of their pensions. Therefore, the court will apply what has been called the "present division" method of distributing that share of Mr. Masi's pension to which it concludes Mrs. Masi is entitled. See Krafick v.Krafick, 234 Conn. 783, 803 (1995).
Because Mr. Masi will have worked more years at age 60 than Mrs. Masi, and at a higher salary, his projected benefits in 2002, when he is eligible to retire, are appreciably higher than Mrs. Masi's in 2007, when she is eligible to retire. Mrs. Masi's share in this asset of Mr. Masi's should be capped at its present value by applying what has been called a "coverture factor" to his present projected pension benefit of $36,000, i.e., by multiplying that amount by a fraction the numerator of which is the number of years Mr. Masi participated in this retirement plan during the parties' marriage, and the denominator of which is the number of years he will have participated by 2002. The result of that calculation is a yearly benefit of $29,647, the monthly equivalent of which is $2,471.
When she is eligible to retire, Mrs. Masi will receive a pension of at least[2] $22,145, the monthly equivalent of which is $1,845. The court concludes that a transfer from Mr. Masi's pension to Mrs. Masi of an amount equal to one-half of the difference between her minimum projected benefit ($1,845 monthly) and his current accrued benefit ($2,471 monthly) represents a fair distribution of Mr. Masi's pension benefit. That amount, $313 monthly, represents 13% of Mr. Masi's current accrued monthly benefit.
The court has considered all of the criteria of Sections46b-62, 46b-81 and 46b-82 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated elsewhere in this memorandum. "The court is not obligated to make CT Page 3319 express findings on each of these statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leov. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders[3]:
1. The defendant shall pay to the plaintiff as alimony the sum of $65 per week until her death, remarriage or cohabitation pursuant to § 46b-86 (b) of the General Statutes, provided that his obligation shall cease upon his retirement or upon the plaintiff's election to begin receiving her share of his retirement benefits pursuant to paragraph 6, below. He shall designate the plaintiff as the irrevocable beneficiary of $50,000 face amount of term life insurance. His obligation to provide such insurance coverage shall terminate when his obligation to make alimony payments terminates.
2. Pursuant to Section 47-14g of the General Statutes, since the date of dissolution of the parties' marriage they have owned the premises at 561 Spindle Hill Road, Wolcott, Connecticut, as tenants in common. Within 60 days of the date of this memorandum, the defendant may buy out the plaintiff's share in the former family home by a payment equal to 50% of the equity, equity being defined as the difference between the stipulated fair market value of $147,000 and any balances due on the first mortgage and the home equity loan. If the defendant shall make satisfactory arrangements within that period, by refinancing or otherwise, for payment to the plaintiff of this amount, the plaintiff shall execute a quitclaim deed of her interest in the property to the defendant in return for that payment. By no later than 60 days of the date the deed is executed the defendant shall refinance any liens on the property.
If the defendant is not able to make satisfactory arrangements for this purchase within 60 days, the property shall immediately be listed for sale with a licensed real estate broker CT Page 3320 chosen by the parties and at a price agreed upon by the parties. If the parties are unable to agree on either of these matters, they shall return to court for a judicial determination. The defendant shall remain in possession of the premises until the house is sold, and he shall cooperate in every way in a good faith effort to sell the property if he is not able to make arrangements to purchase the plaintiff's share. He shall also be fully responsible for paying the outstanding liens and for keeping the property insured for fire and liability and shall also keep the real estate taxes current, and he shall indemnify and hold the plaintiff harmless for these expenses.
When the property is sold, the customary closing costs are to be paid, and the balance of the sale proceeds is to be divided equally.
3. The plaintiff shall retain the Travelers annuity shown on her financial affidavit of September 28, 1995, and the defendant shall retain the Prudential annuity, the Metropolitan Life endowment and the other annuity shown on his financial affidavit of the same date. The defendant shall transfer to the plaintiff within 30 days of this date U.S. Savings Bonds in the amount of $61,400, which the court calculates to be the amount required to effect an equitable distribution between the parties of the assets covered by this paragraph.
4. The plaintiff shall be exclusively entitled to the 1991 Honda Prelude automobile and shall assume and hold the defendant harmless from any and all obligations associated therewith, and the defendant shall be exclusively entitled to the 1989 Nissan Maxima automobile and shall assume and hold the plaintiff harmless from any and all obligations associated therewith.
5. The plaintiff shall be entitled exclusively to all furniture, furnishings and personal property in her possession, including all of the contents of her condominium. The defendant shall be exclusively entitled to all furniture, furnishings and personal property in the marital premises except for those items of personal property listed on Schedule A attached to the plaintiff's proposed orders of September 28, 1995, which is incorporated herein by reference, provided further that, as agreed to by the parties, the parties shall divide equally items in the china cabinet and pictures of their children. In the event the parties are unable to agree on the distribution of these latter items, the matter is referred to the Family Services CT Page 3321 Office in accordance with Valenti v. Valenti, 180 Conn. 521, 533
(1980). The court retains jurisdiction to resolve any issues concerning personal property.
6. Upon the retirement of the defendant or upon the plaintiff's election to begin receiving benefits at an earlier date on or after the defendant's earliest retirement age under the Teachers' Retirement System (the "System"), the plaintiff shall receive from the System a monthly benefit equal to 13% of the monthly benefit then payable to the defendant. Said payments shall be made directly to-the plaintiff by the System for her lifetime. To the extent permitted by the System the plaintiff shall be considered a spouse for the purpose of receiving any survivor or death benefits in the event the defendant dies prior to or after his retirement, but only to the extent of her proportionate share as above. Counsel for the plaintiff shall prepare a QUADRO or QUADRO-like instrument acceptable to the System to effect the court's order. The court retains jurisdiction for the purpose of approving said instrument or of resolving any questions pertaining to its order.
7. The plaintiff shall be responsible for all the liabilities shown on her financial affidavit of September 28, 1995, and she shall hold the defendant harmless from any liability thereon.
Shortall, J.