[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
After a trial in this action and a companion case, National LoanInvestors, L.P. v. World Properties, LLC, X03-CV-98-0491738S, as well as a simultaneous hearing on a Motion for Contempt dated May 24, 2001, filed by the plaintiff, the court makes the following findings of fact.
The defendant, Antonio Reale (hereinafter "Reale") has been a successful contractor and commercial real estate developer since 1965 and continues to work in those businesses today. Nella Reale is Antonio Reale's wife of many years. She is a housewife and has never worked outside the home nor has she had an independent source of income aside from the money given to her from her husband, or the companies her husband owns or controls.
Reale has no bank accounts in his own name. Instead, the accounts are in Nella Reale's name. However, Nella Reale neither writes checks nor controls the family banking. Reale himself selected the banks in which the accounts were opened, opened the accounts, is able to sign checks drawn on the accounts and controls the checking accounts. Nella Reale neither questions her husband about the finances nor investigates his financial dealings.
In conjunction with Reale's real estate development over the years, Reale formed a number of companies, including corporations, general partnerships and limited liability companies to hold assets, operate business and funnel monies. One such company is known as LAN Associates XII (hereinafter "LAN XII"). When LAN XII was originally formed, Reale held a 54% interest in the company, his son and daughter each held an 18% interest and a business partner the remaining 10% interest.
Another such company formed by Reale is known as World, LLC. World, LLC has no assets and does no business, but is used to funnel money between Reale's other entities and Reale's wife. Reale's wife allegedly makes loans to this company despite having no income of her own. Reale is the managing member and owns 1% of the company. Nella Reale owns 51% of World, LLC; Joseph Reale, Reale's son, owns 30% and Seraphina Capobianco, Reale's daughter, owns 18%.
A third company is World Properties, LLC. Nella Reale owns a 63% CT Page 8203-dx interest in this company, Seraphina and Joseph Reale each own an 18% interest, and Reale owns a 1% interest. Reale manages World Properties, LLC. Although Nella Reale does not perform any work for this or any other company, she sometimes receives a monetary distribution, whether salary or draw, from this LLC. Neither Reale, Joseph Reale nor Seraphina Capobianco, the other three members, receives any such distribution.
All three companies, LAN XII, World, LLC and World Properties, LLC, have the same employees, operate out of the same office space and have the same bookkeeper. The entities do not maintain separate payrolls.
At trial the bookkeeper for each of these companies testified that in order to protect his assets from creditors, Reale would have his various companies transfer their income to Nella Reale, who had no creditors. Then when any of the companies needed funds, they would arrange to have the funds transferred from Nella Reale's accounts back into the businesses.
Since approximately 1985, LAN XII has owned one asset, a building and adjacent industrial park in Enfield, Connecticut with an address of One Corporate Road (hereinafter "the Enfield Property"). One Corporate Road is a 113,000 square foot building on 9 acres, plus approximately 135 acres of vacant land adjacent. Reale maintains, rent free, a 4,000 square foot office in this building.
LAN XII borrowed money from Chase Manhattan Bank (hereinafter "Chase") to fund its purchase of the Enfield Property and construction of the building. Chase filed a foreclosure action against Reale and LAN XII on the Enfield Property, obtaining judgment against Reale and LAN XII in 1995. Chase's judgment was over $17 million.
The FDIC as Receiver for Central Bank obtained a judgment of foreclosure against Reale and LAN XII on August 2, 1994, arising out of default of a mortgage on property in New Jersey. The foreclosure did not satisfy the debt, and the FDIC obtained a Revised Final Deficiency Judgment in the amount of $6,938,809.26, plus costs and fees in the amount of $66,910.95.
The plaintiff, National Loan Investors, L.P. (hereinafter "plaintiff" or "NLI"), is the assignee of the FDIC's deficiency judgment and NLI is the present owner of the judgment. NLI's attempt to collect that judgment underlies this case.
It is undisputed that neither Reale nor anyone else has made any payment of the debt due the plaintiff. In early 1995, at a time when both the Chase judgment and FDIC judgment were outstanding and litigation was CT Page 8203-dy pending, LAN XII owned the Enfield Property but did not have the building leased. By end of that year LAN XII had fully leased the Enfield space to First National Supermarkets (hereinafter "First National"). The First National lease, which is still in effect, was guaranteed by First National's parent company, Koninklijke Ahold N.B. (hereinafter "Ahold"), a so-called triple A tenant.
At or around the time that Reale leased the Enfield building to First National, he also reached a settlement with the successor in interest to Chase's judgment, WLL. The terms of the settlement were that WLL would compromise the $17 million judgment and accept $5.2 million in full satisfaction of the debt. To fund the settlement, money was borrowed from People's Bank, secured by a first mortgage in favor of People's Bank on the Enfield Property. Reale and LAN XII applied for the loan. People's Bank loaned the money based on the significant value of the First National lease.
Simultaneously with his obtaining the loan from People's Bank, Reale formed the entity known as World Properties, LLC. World Properties, LLC is the entity that actually borrowed the money from People's Bank which was used to pay off the LAN XII debt.
As a result of the transfer of the Enfield Property through the foreclosure to World Properties, LLC, LAN XII was left with no assets with which to pay the FDIC's judgment. The foreclosure took place on January 5, 1996, more than a year after the FDIC obtained its foreclosure judgment and two months after the Final Revised Deficiency Judgment was entered.
In 1998, some four years after the FDIC had obtained its judgment against Reale and LAN XII, LAN XII settled a lawsuit that had been pending against the FDIC as Receiver for the Bank of New England for $194,000.00. These settlement funds were paid to LAN XII. However, Reale did not put the funds into the account of LAN XII. Instead, the funds were transferred to World, LLC, Reale's shell corporation and then to Nella Reale. The Defendant's ledger shows deposits of the FDIC settlement funds as follows: on 6/19/98 — LAN XII to World, LLC in the amount of $5,000.00; on 6/22/98 — LAN XII to World, LLC in the amount of $5,000.00; on 6/23/98 — LAN XII to World, LLC in the amount of $184,550.00; on 6/23/98 — World, LLC to Nella Reale in the amount of $179,550.00; and on 6/24/98 — World, LLC to Nella Reale in the amount of $5,000.00. A total of $184,550.00 was therefore transferred to Nella Reale.
The transfers were made to World, LLC and then to Nella Reale despite the fact that the money belonged to LAN XII Reale directed that these CT Page 8203-dz transfers be made in order to remove the funds from the reach of his or his companies' creditors, including NLI. In another transaction, Reale owned a building in Vernon, Connecticut in which a Howard Johnson's restaurant/motel operated. Reale sold the subject building to the tenant in 1988, and as part of the financing, Reale took back a $250,000.00 mortgage ("the Howard Johnson's mortgage" or "Shri Nathji mortgage"). From 1988 to 1995, Reale himself received the mortgage payments on the Howard Johnson's mortgage. Although Reale and the mortgagor did execute a mortgage modification agreement, that document did not modify to whom the payments were to be made. Thus, at the time Reale submitted his 1993 financial affidavit to the FDIC, Reale was receiving payments on the $250,000.00 mortgage. Despite the fact that he was receiving these mortgage payments, he neglected to include this receivable on his affidavit. At some point in 1995, Reale instructed the mortgagor to start making mortgage payments to his wife, Nella Reale. Reale endorsed the checks over to his wife until May of 1995 when they were made out to her directly. All of these checks were deposited into Nella Reale's personal bank accounts. However, the mortgage was never assigned to Nella Reale and therefore, there was nothing on the land records reflecting such an assignment. In September, 1998 Reale, not Nella Reale, received the payoff funds in the amount of $156,845.29, and deposited the funds into Nella Reale's checking account. Reale admitted that he transferred the payments made under the Howard Johnson's mortgage to his wife in order to protect the income from his companies' creditors. The transfer of settlement funds took place at a time when both the Chase and FDIC judgments had already been entered.
In another transaction, Nella Reale allegedly loaned her sister and brother-in-law, Gino and Carmela Tordonato (the "Tordonatos"), the sum of $42,500.00. The Tordonatos granted Nella Reale a mortgage in that amount to secure payment. The promissory note and mortgage are dated March, 1995. Despite the existence of Nella Reale's name on the mortgage deed and note, Reale admitted that the money for the loan actually came from him Nella Reale has been receiving payments on the Tordonato mortgage regularly.
Dicussion of the Law and Ruling
Connecticut General Statutes § 52-552a, et seq., the Connecticut Fraudulent Transfer Act ("U.F.T.A." or "Act") is essentially a codification of the common law of fraudulent conveyances. Molitor v.Molitor, 184 Conn. 530, 535, 440 A.2d 215 (1981). The purpose underlying both the common law and the statutory fraudulent conveyance action is to ensure the Court's ability to invalidate property transfers that are clearly fraudulent as to present creditors. CT Page 8203-ea
The party seeking to set aside a conveyance as fraudulent under the U.F.T.A. must show either that the transfer was made without substantial consideration that rendered the transferor unable to meet his obligations, or that the conveyance was made with fraudulent intent. Both alternatives need not be satisfied. Shawmut Bank v. Brooks DevelopmentCorp., 46 Conn. App. 399, 699 A.2d 283 (1997).
The plaintiff seeks to set aside three transfers here: 1) $184,550.00 of LAN XII settlement funds which were transferred to Nella Reale in 1998; 2) $156,845.29 from the payoff to Reale of the Howard Johnsons Mortgage loan which was put into the account of Nella Reale in 1998[1]; and 3) A mortgage note and deed from the Tordonatos, in the amount of $42,500.00.
Connecticut General Statutes § 52-552e (a)(1) provides that:
 A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor.
Thus, to establish a claim under this section, the plaintiff must establish the following elements: that a transfer took place, that the plaintiff's claim arose before the transfer, and that the debtor intended to hinder, delay or defraud the creditor by making the transfer.
Section 52-552b (12) defines a "transfer," inter alia, as any mode of disposing or parting with an asset or an interest therein, whether voluntary or not. In this case, plaintiff established that the LAN XII settlement funds were the rightful property of LAN XII since they arose out of litigation involving LAN XII and were paid to LAN XII. The defendants' accounting ledger reflects and their bookkeeper testified that the settlement funds were paid out from LAN XII to World, LLC and subsequently into Nella Reale, thus resulting in a transfer within the meaning of the U.F.T.A.
The plaintiff has also proved that the $156,945.29 payoff amount of the Howard Johnson's Mortgage was paid to(and owed to) Reale who immediately put that amount into the account of Nella Reale in September 1998.
In March 1995 Reale transferred $42,500 to Nella Reale, which she then loaned to the Tordonatos.
The U.F.T.A. is "designed to protect creditors. It allows creditors to CT Page 8203-eb have a court void a fraudulent transfer if it was a sham or to hide assets." 34. H.R. Proc., pt. 14, 1991 Sess., p. 5355, remarks of Rep. Mintz. The transfer of the LAN Associates XII settlement funds, the Howard Johnsons payoff funds and the funds to lend to the Tordonatos were all transfers within the meaning of § 52-552b (12).
The plaintiff has also proved that its claim arose prior to the foregoing transfers. The term `claim' is broadly defined under the statute as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." § 52-552b (3). The FDIC's foreclosure judgment was entered on August 2, 1994. Therefore, the plaintiff's claim existed as of March, 1995, the date of the earliest transfer at issue.
The final element under § 52-552e (a)(1) requires proof of fraudulent intent. "The determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances." Town Bank and Trust Co. v. Benson,176 Conn. 304, 308-309, 407 A.2d 971 (1978). Because "fraudulent intent is rarely susceptible to direct proof . . . courts have developed "badges of fraud' to establish the requisite actual intent to defraud." In ReKaiser, 722 F.2d 1574, 1582 (2d. Cir. 1983). The following factors are those which a court may consider in determining actual intent: 1) the transfer/obligation was to an insider; 2) the debtor retained possession/control of the property; 3) the transfer was concealed; 4) the debtor was threatened with suit prior to the transfer; 5) the transfer was of substantially all of the debtor's assets; 6) the debtor absconded; 7) the debtor removed or concealed assets; 8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; 9) the debtor became insolvent by the transfer; and 10) the transfer occurred shortly before or after a substantial debt was incurred and the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Connecticut General Statutes § 52-552e (b);Shawmut Bank v. Brooks Dev. Corp., 46 Conn. App. 399, 405, 699 A.2d 283
(1997). Fraudulent intent must be proven by clear and convincing evidence. § 52-552e (b); Dietter v. Dietter, 54 Conn. App. 481,737 A.2d 926 (1999).
In this case, the plaintiff established by clear and convincing evidence the existence of multiple badges of fraud, all of which support the conclusion that the Reale and LAN XII, through Reale, intended to and did defraud the plaintiff by transferring the settlement funds out of LAN XII, and that Reale intended to defraud the plaintiff by transferring the Howard Johnson Mortgage funds and the Tordonato loan funds out of Reale CT Page 8203-ec in order to remove them from the plaintiff's reach.
The court finds that all of the transfers were ultimately made to Nella Reale, Reale's wife, and an insider under the terms of § 52-552b (7). The debtor, Reale, retained possession or control of the property after the transfer, in that Reale utilized the funds for business or personal needs by removing the funds from his wife's accounts whenever he needed them. Before the transfers were made, the debtor had been sued by NLI and NLI's judgment had been entered and collection efforts were underway. The transfer was of substantially all of the debtor's assets, in that LAN XII owned no assets at the time of the settlement and Reale has always maintained, at least to creditors such as the plaintiff, that he has no assets. Equivalent consideration was not received for any transfer. LAN XII received nothing in exchange for the payment of the settlement funds to World, which were then paid to Nella Reale. LAN XII was again rendered insolvent by the transfer of the settlement funds to World. Reale never received any funds from Nella Reale.
The defendants take the position that all payments to Nella Reale were payments of antecedent debts owed to Nella by either Reale or one of the corporate entities. They support this argument by pointing to the ledger entries of the various corporate entities which show huge amounts payable to Nella Reale. However, Nella Reale never earned any money, was never aware when or if she received funds from her husband or one of his entities, was never aware that there were any amounts owed to her, and didn't open any of the many accounts in her name. Any "debts" owed to Nella Reale were shams set up by Reale to attempt to insulate his funds from his creditors. All of the funds in Nella Reale's name came from her husband or his business entities. The court finds that there were no legitimate debts owed by Reale or his entities to Nella Reale.
Prior to the time he received the funds to pay off the Howard Johnson's Mortgage, Reale admitted that he received payments on that mortgage which he immediately transferred to his wife to avoid his creditors. Reale's overriding intent to insulate funds from his creditors was also reflected in writing in the numerous financial affidavits introduced by the plaintiff. Those affidavits, most of which were executed under oath, selectively listed assets and debts depending on the purpose of the document. For example, when Reale was applying for a bank loan, existing debts were not reflected and the value of assets were often embellished. However, when affidavits were submitted to creditors attempting to collect on their debts, debts tended to exceed assets. This evidence, coupled with other badges of fraud enumerated above, clearly establishes fraudulent intent. For all of the foregoing reasons, the plaintiff has proved by clear and convincing evidence all of the requisite elements of a violation of Connecticut General Statutes § 52-552e (a)(1). CT Page 8203-ed
Under subsection (a)(2) of § 52-552e a creditor may prove a fraudulent transfer by establishing that it was an existing creditor of the debtor at the time of the transfer, that the transfer was not made for reasonably equivalent value in exchange for the transfer and that the debtor intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. "An action pursuant to this section deems any transfer fraudulent without regard to intent if the transfer was made without fair consideration and it rendered the transferor unable to pay its obligations or otherwise leaves the transferor under-capitalized. The plaintiff need not demonstrate that the transaction was to an insider nor that the debtor was insolvent at the time of the transfer." Mullen Mahon, Inc. v.Mobilmed Support Services, LLC, 1999 WL 376489 at *5.
As set forth above, the plaintiff has proved that the three transfers to Nella Reale were "transfers" within the meaning of the statute, and that it was an existing creditor of the debtor at the time of the transfers. Reale also admitted that LAN XII had no assets after it transferred the settlement funds to World. Therefore, the transfer of these funds left LAN XII without the ability to pay its debts. Lastly, it is clear that reasonably equivalent value was not exchanged between LAN XII and World, LLC or between World, LLC and Nella Reale, in consideration for receipt of the funds. Similarly, Reale received no consideration from Nella when he transferred the Howard Johnsons payoff amount or the Tordonato mortgage amount to Nella Reale.
For the foregoing reasons, there was no exchange of reasonably equivalent value with respect to any of the three transfers in question and those transfers were fraudulent within the meaning of Connecticut General Statutes § 52-552e (a)(2).
The plaintiff also seeks to recover under §52-552f (b), which provides:
 A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.
After arguing at length that the "debts" owed to Nella Reale were shams, it is somewhat curious that the plaintiff pursues the remedy under this section, which requires the existence of an antecedent debt. As stated above, the court agrees with the plaintiff that there were no CT Page 8203-ee debts owed to Nella Reale. Therefore, this section is not applicable.
The plaintiff also seeks to set aside the three transfers at issues pursuant to common law. In order to set aside a conveyance as fraudulent under the common law, the plaintiff must show "either (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet to his obligations; or (2) that the conveyance was made with fraudulent intent in which the grantee participated." Tyersv. Coma, 214 Conn. 8, 11, 570 A.2d 186 (1990). "The plaintiff needs to establish only one of these alternatives. . ., not both." Watson v.Watson, 221 Conn. 698, 707, 607 A.2d 383 (1992).
Since the proof required under the first alternative is virtually identical to that required under § 52-552e (a)(2), the plaintiff has also proved that the transfers were fraudulent conveyances under the common law in that they were made without substantial consideration and rendered the transferor unable to meet to his obligations.
In their Second Special Defense, the defendants allege that because the date of the Tordonato mortgage transaction was March 30, 1995, and the date of the Amended Complaint was May 30, 1999, the four year statute of limitations contained in Connecticut General Statutes § 52-552j (i) bars this claim.
Section 52-552j provides:
 A cause of action with respect to a fraudulent transfer or obligation under sections 52-552a to 52-552l, inclusive, is extinguished unless action is brought: (1) Under subdivision (1) of subsection (a) of section 52-552e, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under subdivision (2) of subsection (a) of section 52-552e
or subsection (a) of section 52-552f, within four years after the transfer was made or the obligation was incurred . . .
In support of this special defense, the defendants point to the transcript of the deposition of Reale which was taken by the plaintiff's attorney on August 27, 1997. During the course of the deposition Reale stated that he had given Nella Reale funds to lend to her sister to purchase a house in Wethersfield. The defendants argue that as of August 27, 1997 the plaintiff could reasonably have discovered the transfer of the Tordonato funds, but failed to file the Amended Complaint within one CT Page 8203-ef year of that date. The plaintiff argues that Reale's reference to the transfer at the deposition was not sufficient to put the plaintiff on notice of the transfer because Reale did not identify the Tordonatos by name. The court agrees with the defendants. There is no evidence that Reale refused to give the name of his relatives. Apparently, he was not asked. The plaintiff had sufficient notice of the transfer to trigger the running of the statute of limitations. Therefore, the fraudulent conveyance claim with respect to the Tordonato mortgage is barred by the statute of limitations.
The defendants have made a similar statute of limitations claim with respect to the transfer of the Howard Johnson's proceeds. However, funds which paid off that mortgage were paid to Reale in October, 1998, well within the four year statute of limitations period. Therefore the defendants have not proved the special defense of failure to comply with the statute of limitations with respect to the Howard Johnsons's proceeds.
Pursuant to § 52-552j judgment is hereby entered against Nella Reale in the amount of $471,419.29, which amount includes $184,550 plus interest in the amount of $73,820 at the rate of 10% per annum pursuant to § 37-3a from June 24, 1998, and $156,845.29, plus interest in the amount of $56,204 at the rate of 10% per annum pursuant to § 37-3a
from October 1, 1998 of. The court awards also the plaintiff a reasonable attorneys fee to be determined after hearing.
By the court,
Aurigemma, J.